**Lewis Eugene WARD,
Plaintiff/Appellant,**

v.

**MID–SOUTH HOME SERVICE and
Great American Insurance
Companies, Defendants/Appellees.**

Supreme Court of Tennessee,
at Jackson.

April 24, 1989.

Marvin A. Bienvenu, Jr., Gatti, Keltner & Bienvenu, Memphis, for plaintiff/appellant.

John W. Leach, Wilson, McRae, Ivy, Sevier, McTyier and Strain, Memphis, for defendants/appellees.

## OPINION

HARBISON, Justice.

In this case an hourly-paid worker sustained a knee injury while playing basketball at the home of a customer of his employer during a lull in construction work being performed there. The trial judge held that the injury did not arise out of the employment. We affirm.

Appellant Lewis Eugene Ward had been employed by Mid–South Home Service for about six weeks when he was injured on Saturday August 9, 1986. The employer was engaged in home construction, repair and maintenance. Appellant was employed at an hourly wage. He and other field employees kept their own time records and turned them in at the end of each week. These employees were not paid during their lunch breaks, and they either paid for their own lunches or brought them from home. Their time records were kept on an honor system. Two of those kept by appellant were exhibited at trial. They simply show the number of hours worked at a particular job on a given day. Appellant's time record for August 9, 1986, shows that he worked for 3½ hours on a job designated as "Princeton" and 3½ hours at the residence where he was injured.

This residence belonged to a fellow employee of appellant, Wilbur Kobeck. The owner was having a room added to the rear of the house. The company for which both Kobeck and appellant worked, Mid–South Home Service, was doing the work, but Kobeck was not being paid for the hours which he himself devoted to the job.

Appellant and his fellow workers normally reported to the company office at about 7:30 each morning. From there they were dispatched in company vehicles to various job locations. The company had radio equipped vehicles, and when employees were through with their work at one place, frequently they would be dispatched to another.

On the morning of August 9, 1986, appellant and four other company employees were dispatched in two service trucks to the "Princeton" job above referred to for the purpose of removing a large tree limb which had fallen on a residence a short time previously. They apparently worked there for 3½ hours and then went to the Kobeck residence. One of the service trucks picked up a "buggy" containing con-

crete, and the crew worked at the Kobeck residence for an hour or more, pouring concrete footings for the room to be added. They ran short of concrete, however, and one of the service trucks was dispatched with the "buggy" to obtain an additional half-yard of mixed concrete. The other service truck remained at the Kobeck residence as did appellant and two other young hourly-paid employees.

The three employees who remained at the job site were told to take a break. They were free to obtain lunch if they had desired to do so, but instead they decided to "pass the time" by playing basketball on a concrete patio at the rear of the Kobeck home.

Mr. Kobeck was one of the two men who left to obtain additional concrete. He could not recall whether he did or did not expressly give permission for the remaining workers to play basketball, although he said that he might have done so if requested. In any event, the three workers who remained at his residence did obtain a basketball from Mrs. Kobeck. They entertained themselves by shooting baskets, and appellant injured his knee when he made a sharp cut while running toward the goal.

The salaried company officer in charge of the crew, accompanied by Kobeck, left to obtain additional concrete. It was understood by all of the workers that they would be gone for a minimum of thirty minutes, and perhaps forty-five minutes to an hour. Whether appellant and his fellow workers were being paid during the time while the concrete was being obtained is disputed. Appellant testified that he was being paid, but the other workers testified that they were not. It cannot be determined from appellant's time record whether he charged or did not charge for the particular break during which he was injured. He simply turned in charges for 3½ hours at each of the two jobs at which he worked on the date in question.

It is undisputed in the record that the employer did not maintain recreational equipment for the use of its employees or sponsor sports activities. None of the workers involved had ever played basketball during working hours on any other occasion, either during unpaid lunch breaks or during any other working hours. All of them were young men and were sports enthusiasts. There is no showing, however, that engaging in sport or recreational activity was in any way a customary or usual incident of the employment in this case.

Where an employer sponsors or encourages athletic events, employees injured while engaging therein or while attending such events frequently are held to be covered under workers' compensation statutes. In *Kingsport Silk Mills v. Cox*, 161 Tenn. 470, 33 S.W.2d 90 (1930) compensation was allowed to an employee who fell while she was walking across a basketball floor where she had been watching a game played by other employees. The game was played on a court maintained by the employer for use of its employees during their lunch hour. For numerous similar holdings *see* Larson, *The Law of Workmen's Compensation*, § 22 (1985).

Ordinarily, however, compensation has been awarded only when recreational or social activities are shown to be a regular incident of the employment or under circumstances where the employer requires participation or otherwise derives some substantial direct benefit from the activity, such as sponsoring a team for advertising or publicity purposes.

None of those situations is presented here. Even if the employee were being paid during the break in question, as the trial judge concluded he probably was, the recreational activity was not in any way an incident of the employment but was engaged in by the employees purely for their own entertainment and amusement. The activity was not prohibited or illegal, and it occurred during a lull in the regular work activities. There is no question that the employee would have been covered for worker's compensation if he had been engaged in cleaning up the job site or preparing it for further work. Where he and his fellow employees departed from their employment, however, purely for personal recreation under the circumstances shown

here, we are of the opinion that the evidence does not preponderate against the conclusion of the trial judge that the injury did not arise out of and was not an incident to the regular employment.

Although factually distinguishable, the case of *Jordan v. United Methodist Urban Ministries, Inc.*, 740 S.W.2d 411 (Tenn. 1987) illustrates the principle that when an employee during off time engages in purely independent recreational activities, he or she, at most, is on the outer periphery of the statutory requirements that an accident arise out of and during the course of employment. In numerous cases this Court has approved recovery where employees are injured on the premises of the employer during a lunch break, paid or unpaid. *See generally Holder v. Wilson Sporting Goods, Co.*, 723 S.W.2d 104 (Tenn.1987) and cases collected there. As previously stated, however, when sports or other recreational activities result in injury, compensation generally has been allowed only when such activities can be found to be in some way a regular incident of employment either because of sponsorship by the employer, custom or acquiescence. As stated in the text previously cited:

> There is a genuine distinction between a case in which employees have been playing handball against the wall of a garage at noon with more or less regularity, and a case in which a couple of employees find a ball and immediately start up a handball game in the shop where such a thing has never been heard of before. Larson, *op. cit. supra* § 22.12.

In our opinion, the preponderance of the evidence supports the conclusion of the trial judge in this case. The judgment is affirmed at the cost of appellant, and the cause will be remanded to the trial court for collection of costs accrued there an any other proceedings which may be necessary.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.