# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 5, 2005 Session

## GATHA BLAKENSHIP v. AMERICAN ORDNANCE SYSTEMS, LLS, d/b/a MILAN ARMY AMMUNITION PLANT

**Direct Appeal from the Circuit Court of Carroll County**
**No. 4516, C. Creed McGinley, Judge**

---

**No. W2004-00866-SC-R3-CV - Filed May 12, 2005**

---

The employee in this workers' compensation case injured her back while taking an upper body strength test on the employer's premises. The employee, who was laid off at the time of the injury, voluntarily took the strength test as part of the application process for new jobs being created in the employer's factory. The trial court found that the employee's injury was not compensable because it did not arise out of her employment. The employee's appeal was transferred to the full Supreme Court prior to the Special Workers' Compensation Appeals Panel hearing oral argument. The dispositive question before this Court is whether the evidence preponderates against the trial court's finding that the employee's injury did not arise out of her employment. After carefully examining the record and the relevant authorities, we hold that the evidence does not preponderate against the trial court's finding that the employee's injury did not arise out of her employment. We also conclude that the employee's injury did not occur in the course of her employment. Accordingly, we affirm the trial court's judgment.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Circuit Court Affirmed**

FRANK F. DROWOTA, III,,C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined.

Jeffrey P. Boyd, Jackson, Tennessee, for the appellant, Gatha Blankenship.

Fred Collins, Milan, Tennessee, for the appellee, American Ordnance Systems, LLC, d/b/a Milan Army Ammunition Plant.

**OPINION**

## I. Factual and Procedural Background

The employee, Gatha Blankenship, was a fifty-four-year-old high school graduate at the time of trial. Her employment history consisted of production work in various factories. In 1987, the employee began working for the employer in this case, American Ordnance Systems, LLC, d/b/a Milan Army Ammunition Plant. The employee's job was to assemble bullets. Her duties did not require heavy lifting.

In February 2002, the employee was temporarily laid off due to a decrease in the employer's business.[1] While the employee was on layoff status, the employer posted a notice at its facility that medical evaluations for upper body strength would be performed on those employees interested in applying for new jobs being created in the plant. The new positions had specific lifting requirements. Thus, in order to qualify as a candidate for the new jobs, applicants had to pass a strength test, which entailed repetitive lifting of 25 pounds and occasional lifting of 70 pounds. The test was available to employees only, not the general public. The posted notice instructed employees interested in the new jobs to contact the employer's human resources department.

The employee did not see the posted notice prior to being laid off but heard about it from friends after she was laid off. Although no one in a supervisory capacity ever told the employee that she was required to take the strength test, she understood based on conversations with friends that she needed to take the test in order to keep her current job. The employee acknowledged, however, that the strength test was not a condition of her continued employment because she was eventually called back to work despite not passing the test.

The employee took the strength test on March 7, 2002, on the employer's premises. The test, which took one hour to take, involved lifting weights from various heights and positions. The employee was not compensated to take the test, and she did not pass it. She was receiving unemployment benefits when she took the test.

Immediately upon completing the strength test, the employee began experiencing weakness in her back. By the time she got to her car, the weakness had developed into pain. Over the next several days, the pain worsened and radiated down her leg. The employee testified that within days of taking the strength test she was concerned that she had "damaged something" in her back. Over the next several weeks, the employee attempted to treat herself but to no avail. When it became clear to the employee that she was in "some serious trouble" with her back, she sought medical attention at a hospital emergency room on May 19, 2002. She gave hospital employees a history of having back pain since lifting weights during the strength test. She gave the same history to her physician on May 21, 2002. The employee was diagnosed with a bulging disc. She was given a permanent physical impairment rating of 5% to the whole body.

---

[1]The employee was called back to work in September 2003, but she was laid off again, this time permanently, in December 2003. Upon resuming her duties in September 2003, she was not required to do any heavy lifting. After her termination in December 2003 the employee got a job in another factory making rivets for chainsaws.

According to the employee, she reported the injury to the employer on May 21, 2002.[2] The employer denied the claim. This suit resulted.

Paul Harrison, the employer's human resources manager, testified that taking the strength test was voluntary and that the employee was not paid to take the test. Harrison also testified that taking the test was not a condition of the employee's continued employment or her return to work. He stated that the strength test was open only to employees, not the general public. He also stated that employees on temporary layoff status, such as the employee in this case, were still regarded as employees of the company for 120 days, at which point they were terminated if there was insufficient work to call them back. This arrangement was dictated by a collective bargaining agreement between the employee's union and the employer. In any event, Harrison testified that the employee was still employed when she took the strength test on March 7, 2002, a point conceded by the employer's lawyer at trial.[3]

The trial court, noting that "this is an unusual case," found that the employee's back injury was not compensable because it did not arise out of her employment. The trial court explained that "perhaps she had good motives in submitting to the test because she thought by doing so that she could seek better employment within her company or more immediate employment within her company since she's on layoff. But there's no question in the court's mind that there's no element of compulsion to this." Thus, the trial court found that taking the test was voluntary. The trial court also found it significant that the employee was not compensated to take the test. The trial court made a provisional finding of 25% permanent partial disability to the body as a whole in case the court's finding regarding compensability was reversed on appeal.

The employee appealed the denial of benefits. The appeal was transferred to the full Supreme Court prior to oral argument before the Special Workers' Compensation Appeals Panel. We note that the standard of review in this case is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (Supp. 2004).

## II. Analysis

Many cases have reached this Court concerning the statutory requirements that a compensable injury arise out of and occur in the course of the employment. See Tenn. Code Ann. § 50-6-102(13)(Supp. 2004) (to be eligible for workers' compensation benefits, an employee must

---

[2]The employer raised as a defense the employee's failure to give notice of the injury within 30 days as required by Tennessee Code Annotated section 50-6-201. The employer contends on appeal that the employee should not be allowed to recover even if her injury arose out of and in the course of her employment because she did not timely report the injury. In light of our conclusion that the employee's injury did not arise out of and in the course of her employment, the issue of timely notice is pretermitted.

[3]It is unclear from the record how the employee was able to receive unemployment benefits while still employed. We infer that she was not being paid by the employer while she was laid off.

suffer an "injury by accident arising out of and in the course of employment"). Tennessee is not unique in this regard, for 43 states require that the injury arise out of and occur in the course of the employment. 1 Larson's Workers' Compensation Law § 3.01(2004). Indeed, the bulk of workers' compensation litigation centers on these two requirements. Id. As one commentator has observed, "[f]ew groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation." Id.

In Tennessee, as in most jurisdictions, the statutory requirements that the injury arise out of and occur in the course of the employment are not synonymous, although both elements exist to ensure a work connection to the injury for which the employee seeks benefits. See Sandlin v. Gentry, 300 S.W.2d 897, 901 (Tenn. 1957). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. Fink v. Caudle, 856 S.W.2d 952, 958 (Tenn. 1993). That is, an injury occurs in the course of employment "when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." 1 Larson's Workers' Compensation Law § 12 (2004). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. Hill v. Eagle Bend Mfg. Inc., 942 S.W.2d 483, 487 (Tenn. 1997).

In contrast, arising out of employment refers to causation. Reeser v. Yellow Freight Sys., Inc., 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. Fritts v. Safety Nat'l Cas. Corp., __ S.W.3d __ , 2005 WL 926897 (Tenn. 2005). The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. Thornton v. RCA Serv. Co., 221 S.W.2d 954, 955 (Tenn. 1949). Thus, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." Jackson v. Clark & Fay, Inc., 270 S.W.2d 389, 390 (Tenn. 1954).

In this case, the employer argues that the employee's injury did not arise out of and occur in the course of her employment because her participation in the strength test was strictly voluntary and she was not paid to take the test. The employer also argues that the employee's job from which she was laid off and to which she was later called back did not have lifting requirements. The employer further asserts that the strength test was not a condition of the employee's continued employment or return to work.

The employee responds that her injury should be compensable because the employer paid for the strength test, scheduled and conducted the test on the employer's premises, and the test was available only to employees, not the general public. Thus, the employee contends that her participation in the test provided a benefit to the employer by identifying a group of persons physically capable of performing the new jobs at the plant.

Like the trial court, we are persuaded that the employee's back injury did not arise out of her employment because the record fails to establish a causal connection between the conditions of the employee's job assembling bullets and her back injury. The employee's injury did not result from a danger or hazard peculiar to her work or was not caused by a risk inherent in the nature of her work. Evidence that the employer paid for the strength test and administered it on its premises does not trump the fact that the injury did not occur while the employee was performing her job making bullets or a task incidental thereto. Rather than resulting from a danger or hazard peculiar to her work or being caused by a risk inherent in the nature of her work, the employee was injured while undertaking a voluntary test – for which she was not compensated – as part of the application process for a job she did not have and may not have gotten even if she passed the test.[4] In short, this case falls within the rule that an injury which is merely coincidental, contemporaneous, or collateral with the employment is not compensable. Jackson, 270 S.W.2d at 390.

Similarly, the record establishes that the employee's back injury did not occur in the course of her employment. The record demonstrates that taking the strength test was strictly voluntary. As stated by the trial court, there was "no element of compulsion" on the employer's part. The posted notice directed employees interested in the new positions to contact human resources. The notice did not require employees to take the test or otherwise apply for the new jobs. Moreover, the record is unrefuted that the strength test was not a condition of the employee's continued employment or being called back to work. Further, the employee was not paid to take the test, and her current job did not have lifting requirements. The test was merely for the purpose of determining if employees interested in being considered for the new jobs met the physical qualifications for those positions. While it is true that the employee's participation in the test benefitted the employer by helping it identify persons physically capable of performing the new jobs, it is equally true that the injury did not occur while the employee was performing a duty that she was employed or required to perform or engaged in a task incidental thereto. Accordingly, the trial court correctly declined to award benefits.

### III. Conclusion

For the reasons stated above, we hold that the employee's injury did not arise out of and in the course of her employment with American Ordnance Systems, LLS, d/b/a Milan Army Ammunition Plant. Accordingly, the judgment of the trial court is affirmed. Costs are assessed against Gatha Blankenship and her surety, for which execution may issue if necessary.

FRANK F. DROWOTA, III,
CHIEF JUSTICE

---

[4]Harrison testified that there were 30 openings and 500 employees in the plant.

-5-