IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 8, 2005 Session

## PHYLLIS A. YOUNG v. TAYLOR-WHITE, LLC

**Direct Appeal from the Circuit Court for Cocke County**
**No. 28,021-II    Richard R. Vance, Judge**

---

**No. E2004-00788-SC-R3-CV - Filed October 20, 2005**

---

We granted review in this workers' compensation case to determine whether the trial court erred in awarding benefits to an employee injured while attending an employer-sponsored company picnic. After reviewing the evidence and applicable authority, we conclude that the employee's injury did not occur in the course of her employment and therefore is not compensable under the workers' compensation law. Accordingly, we reverse the trial court's judgment.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Trial Court Reversed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and ADOLPHO A. BIRCH, JR. and JANICE M. HOLDER, JJ., joined.

Daniel R. Goodge, Knoxville, Tennessee, for the Appellant, Taylor-White, LLC.

Terry E. Hurst and Brad L. Davidson, Newport, Tennessee, for the Appellee, Phyllis A. Young.

### OPINION

Phyllis A. Young ("Young") filed a complaint against her employer, Taylor-White, LLC ("Taylor-White"), alleging that she suffered a compensable injury to her shoulder on September 14, 2002, at a company-sponsored picnic. Taylor-White denied that the injury was compensable because it did not arise out of and in the course of employment. At trial, the parties agreed that the only issue before the court was whether Young's injury of September 14, 2002 was compensable.

### Background

The pertinent facts as developed at trial are undisputed. Young went to work for Taylor-White in 1999 making television sets and was fifty-four years old at the time of trial.

On September 14, 2002, Taylor-White sponsored a company picnic. The picnic was held on a Saturday, outside of work hours, at a public park off of the company's premises. Young and other employees were informed of the picnic by signs on the Taylor-White plant's bulletin boards and by word-of-mouth from one of the supervisors.

Young testified that she attended the picnic with her friend, Sarah Bales ("Bales"), also a Taylor-White employee, and participated in a number of games. These included a hula-hoop contest, a balloon toss, and a three-legged race. The three-legged races were organized in heats, with the winners of each heat advancing. Young and Bales had won two races and were competing in a third when Young stepped on something and fell, injuring her shoulder. After she fell, Jack Lester, a member of Taylor-White management, came to see what had happened and told Young's sister-in-law to take her to the hospital.

Eddie Cooper ("Cooper") testified that he was a Human Resources Specialist at Taylor-White and that his duties included helping to organize the annual picnic. Taylor-White hired an entertainment company called Funville to organize the picnic. A Funville D.J. played music and organized a number of games at the picnic, including the three-legged race. Prizes were offered to the winners of some of the games, including a $50.00 prize to be split between the two winners of the three-legged race. Taylor-White also gave door prizes to attendees. Taylor-White usually spent between $17,000 and $19,000 on the picnic.

Cooper explained that Taylor-White required employees to sign up for the picnic in advance so that the company could get an attendance count for purchasing food. Upon arrival at the picnic, employees had to check in and received an arm band to wear during the picnic. Neither employees nor management were required to attend the picnic. There were no adverse consequences if an employee signed up but did not attend the picnic, and no one was paid for attending. Cooper said that he did not attend the picnic one year and that there were no consequences for his failure to attend.

Young conceded that she was not required to attend the picnic and was not required to participate in any games at the picnic. She said that the announcer had particularly encouraged her and Bales to participate, referring to them as "Laverne and Shirley," and she felt that the announcer "kept insisting" that she participate in the games. She said, however, that her Taylor-White supervisors did not require her to participate, and she understood that the picnic was a benefit Taylor-White provided to show its appreciation to its employees.

Sarah Bales testified that she did not feel that Taylor-White or her supervisor expected her to attend the picnic or required her to participate in any games. Bales had worked at Taylor-White for five and a half years and had attended the picnic every year but one. She said that there were not any consequences for her failure to attend the picnic that year.

Following her shoulder injury, Young was off work for four months. She then returned to work at Taylor-White, but continued to have difficulty with her shoulder. She began seeing Dr.

Stephan Ponder, who told her that she "was keeping it aggravated." Dr. Ponder recommended surgery, and Young underwent surgery on December 17, 2003.

After hearing the testimony of only three witnesses, Young, Bales, and Cooper, the trial court held that the injury was compensable. The trial court reasoned that although Taylor-White did not officially require Young or any other employee to attend the picnic, she was encouraged to participate in the race both by the verbal inducement of the Funville announcer and by the offer of the $50.00 prize for first place. The trial court noted that Taylor-White paid for the picnic as it had for several years; that it promoted the picnic; and that the company approved of the games and activities offered by Funville at the picnic.

Taylor-White appealed. We accepted review before the case was heard or considered by the Special Workers' Compensation Appeals Panel.

## Analysis

Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2005); see also Blankenship v. Am. Ordnance Sys., LLS, 164 S.W.3d 350, 353 (Tenn. 2005). Our standard of review of questions of law is de novo without a presumption of correctness. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003).

To be compensable under the workers' compensation law, an injury must "aris[e] out of and in the course of employment." Tenn. Code Ann. § 50-6-102(13) (2005). "In Tennessee, as in most jurisdictions, the statutory requirements that the injury arise out of and occur in the course of the employment are not synonymous, although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." Blankenship, 164 S.W.3d at 354 (citing Sandlin v. Gentry, 300 S.W.2d 897, 901 (Tenn. 1957)).

An injury arises out of the employment when "there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." Blankenship, 164 S.W.3d at 354 (citing Fritts v. Safety Nat'l Cas. Corp., 163 S.W.3d 673, 678 (Tenn. 2005)). An injury occurs in the course of employment if "it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." Blankenship, 164 S.W.3d at 354 (quotation and citation omitted). The issue in this case is whether Young's injury occurred during the course of her employment with Taylor-White.

The requirements that an injury arise out of and occur in the course of employment exist to ensure that there is a rational relationship between the employment and the activity in which the employee was engaged when the injury occurred. See, e.g., id. Therefore, the fact that an injury occurs at an employer-sponsored event, or even on the employer's premises or during normal work

hours, is not determinative of whether it occurred during the course of the employment. This is particularly so when participation in the activity causing the injury is not required by the employer. For example, in Blankenship, the employee sustained a back injury while performing a voluntary strength test on the employer's premises. The employer paid for the test and administered it to employees who were interested in applying for different jobs within the employer's plant. We held that the injury did not occur in the course of the employment because the evidence established that taking the test was strictly voluntary; there was "no element of compulsion on the employer's part." Id. at 355 (internal quotation omitted); see also Ward v. Mid-South Home Serv., 769 S.W.2d 486, 487-88 (Tenn. 1989) (holding that construction worker's knee injury did not occur in the course of employment where it was sustained during an impromptu basketball game during work break at job site).

We recognize, however, that when an employee acts at the request of his or her employer, the activity may occur in the course of the employment even though the activity is outside the scope of the employee's normal duties or occurs off of the job site. Under some circumstances, the course of employment extends beyond the normal bounds of work; injuries causally connected to such extended job circumstances necessarily arise from the employment as well. For example, in McCann v. Hatchett, 19 S.W.3d 218 (Tenn. 2000), we adopted the rule that traveling employees remain in the course of their employment throughout the duration of their trip, unless "there is a distinct departure on a personal errand." 19 S.W.3d at 221. In McCann, we reversed the grant of summary judgment to the employer where the employee drowned in a motel pool while on a business trip for the employer. We held that "[b]ecause an employee who travels on the business of the employer is considered to be within the course of his or her employment continuously during the trip, reasonable recreational activities properly undertaken by the employee during the trip are rationally connected to the work." Id. at 222.

Put another way, because the employee serves at the pleasure of the employer, when the employee is engaged in an activity required by or at the direction of the employer, the employer's compulsion brings the activity within the course of the employment. The injury arises out of the employment if the injury is causally related to the activity required by the employer, even if that activity bears no relationship to the employee's normal work duties.

The trial court resolved this case by applying a test formulated by Professor Larson addressing recreational injuries as a particular class of work-related injuries. The so-called "Larson test" provides that:

> Recreational or social activities are within the course of employment when
>
> (1) they occur on the premises during a lunch or recreational period as a regular incident of the employment; or

(2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of the employee, brings the activity within the orbit of the employment; or

(3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

2 Larson's Workers' Compensation Law § 22.01 (2001).

Although never explicitly approved by this Court, two Special Workers' Compensation Appeals Panels have applied the Larson test in resolving cases involving recreational injuries. Segars v. Liberty Mut. Ins. Co., 1996 WL 164453, *3 (Tenn. Workers' Comp. Panel 1996) (holding injury sustained by employee while playing volleyball at company picnic was compensable where employee testified that his employer told him he expected to see him there and requested three times that he play volleyball); see also Tucker v. Acme Boot Co., Inc., 856 S.W.2d 703, 705 (Tenn. Workers' Comp. Panel 1993) (holding employee's injury sustained while playing softball on company team was not compensable).

In light of the principles discussed above, we decline to adopt the Larson test as a rule for resolving all cases involving recreational injuries. In our view, the voluntary nature of the activity, rather than the fact that the activity occurs on the employer's premises or provided a benefit to the employer, is the touchstone for determining whether the injury occurred during the course of employment.

The trial court and the parties correctly identified the issue in this case as whether Young's participation in the three-legged race at the picnic was voluntary or was impliedly required as part of her employment. The trial court, relying heavily on Segars, held that Young's participation was not voluntary, because she testified that the D.J. encouraged her to participate in the race. The trial court also reasoned that the $50.00 first prize, to be split between the two winners, was an inducement by Taylor-White to participate in the race.

Although the D.J. did encourage Young to participate in the race, neither mere encouragement nor the offer of a nominal cash prize is enough to transform what would otherwise be a voluntary activity into one within the course of employment. Young testified that she chose to attend the picnic and chose to participate in the race and that she did not feel compelled to do so. She testified that she understood that she was not required to participate in the picnic or the race; that attendance at the picnic and participation in the events was voluntary; and that there would be no employment consequences for declining to participate. Young's co-worker and friend, Bales, as well as Human Resources Specialist Cooper, also testified that attendance at the picnic was voluntary. The preponderance of the evidence therefore does not support the trial court's holding that Young's participation in the race was involuntary. To the contrary, the preponderance of the evidence shows that it was voluntary. Therefore, although Young's injury certainly arose out of her participation in

the three-legged race, because the race was not within the course of her employment, the injury is not compensable.

## Conclusion

After considering the applicable authority and the arguments of the parties, we reverse the judgment of the trial court awarding benefits to Young.  We hold that the injury to her shoulder did not occur in the course of her employment with Taylor-White.  Costs of the appeal shall be assessed to the appellee, Phyllis A. Young.

_____

E. RILEY ANDERSON, JUSTICE