
**FILED**

**November 28, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:18 P.M.**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Gregory Pope | ) Docket No.   2015-01-0010 |
| | ) |
| v. | ) State File No. 65681-2014 |
| | ) |
| Nebco of Cleveland Inc., d/b/a | ) |
| Toyota of Cleveland, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Thomas Wyatt, Judge | ) |

---

**Reversed and Dismissed - Filed November 28, 2016**

---

This appeal involves a car salesman who injured his knee participating in a recreational charity event sponsored in part by his employer, a car dealership. The employer refused to pay workers' compensation benefits on the basis that the salesman's participation in the recreational activity was voluntary and not a part of his work duties. The trial court found that the salesman's injury occurred in the course and scope of his employment and ordered the employer to reimburse him for his out-of-pocket expenses and pay the medical bills associated with his treatment. The trial court also ruled that the salesman's attorney was entitled to calculate his fee based on the amount of the medical expenses and out-of-pocket expenses. The employer has appealed, raising two issues: (1) whether the evidence preponderates against the trial court's determination that the salesman's participation in the recreational activity was impliedly required within the meaning of Tennessee Code Annotated section 50-6-110(a)(6)(A) and was a part of his work duties under Tennessee Code Annotated section 50-6-110(a)(6)(C), and (2) whether the award of attorney's fees was proper. We hold that the trial court erred in finding the salesman's participation in the recreational event was impliedly required by the employer or was a part of his work duties, pretermitting our consideration of the attorney's fees issue. The trial court's decision is reversed and the case is dismissed. The court's order, as reversed, is certified as final.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Jennifer Orr Locklin, Nashville, Tennessee, for the employer-appellant, Nebco of Cleveland, Inc., d/b/a Toyota of Cleveland

William J. Brown, Cleveland, Tennessee, for the employee-appellee, Gregory Pope

**Factual and Procedural Background**

Gregory Pope ("Employee"), a fifty-three-year-old resident of Bradley County, Tennessee, suffered a serious knee injury on August 16, 2014, while participating in a "mud run" charity event sponsored in part by his employer, Nebco of Cleveland, Inc., d/b/a Toyota of Cleveland ("Employer"). The mud run, a fundraiser to benefit Habitat for Humanity, involved numerous teams competing for the fastest time negotiating an obstacle course in the mud. Employee was injured attempting to scale a six-foot wall approximately ten minutes into the course.

Employee's injury, a left quadriceps tendon rupture, required surgery to repair. His personal health insurance paid most of his medical bills, which exceeded $19,000, and he incurred out-of-pocket expenses of approximately five hundred dollars. Employer denied Employee's workers' compensation claim based upon its belief that he had voluntarily participated in the event, barring any recovery. Employee responded that his participation in the mud run was required and was a part of his work-related duties. Although Employee returned to work following his surgery, he was eventually terminated for reasons unrelated to his injury.

Three individuals testified at trial: Dave Mason, a fellow sales consultant and the individual tasked with forming the mud run team; Eddie Triplett, Employer's general manager who asked Mr. Mason to form a team; and Employee. Employee testified that when he was first approached by Mr. Mason to participate in the mud run, Mr. Mason told him that Mr. Triplett had asked him to organize a team for the event. Employee declined to participate because the event was on a Saturday morning, which he described as a "peak selling time" for sales people. In all, Mr. Mason approached Employee three or four times about joining the team and, eventually, Employee agreed to participate because he believed "that if [he] bailed at that point because it was so close to the event that everyone would have remembered, '[o]kay. Greg Pope didn't do it.' So it kind of put me out there." Employee was not concerned that any adverse employment action would be taken against him if he declined, which he did at least twice before finally agreeing to participate.

Employee also testified that he did not want to be away from the dealership on a Saturday, stating that, as a single parent, he "had to think of making money for [his family] versus doing [the mud run] and the possibility of getting hurt." When asked whether he was concerned about being disciplined if he refused to participate, he testified, "I didn't think I would [have] been fired if I didn't do it. I just [thought] that . . .

2

everyone would have realized Greg was the last hope and he didn't do it. And that would have been a let down for the team."

Employee further testified that he felt participating in the mud run was a work-related activity because it occurred during working hours – a Saturday morning – and he felt it was his duty to help represent the dealership. He also described having attended a gathering at the dealership approximately two days prior to the event at which Mr. Triplett distributed matching "Captain America" t-shirts and asked the team to dress alike.[1] The participants on the team were allowed to drive dealership cars to the event, but they were not obligated to stay with the vehicles, attempt to sell any vehicles, or staff a tent operated by Employer's corporate owner. At the beginning of the event, Mr. Triplett used his influence as one of the event sponsors to obtain an earlier starting time for his team, as the salesmen wanted to return to the dealership so they could sell vehicles. It is undisputed that team members were not provided any type of compensation to participate.

Employee acknowledged that he had not participated in prior mud runs sponsored by Employer. He also acknowledged that no one threatened to take adverse employment action against him if he declined to participate.

Mr. Mason, who was Employee's co-worker and friend, testified that Employer, in return for sponsoring the mud run, had been allotted multiple teams to enter in the event. He indicated that Mr. Triplett asked him to put together a team, and Mr. Mason considered participation to be a work-related activity because it was an opportunity to promote the dealership. He stated that because he had seen Employee in the gym and knew him to be in good physical condition, he decided to ask Employee to join the team. After experiencing difficulty filling the team, he returned to Employee and "did pressure him into doing it." Mr. Mason had no supervisory responsibilities at the dealership. He was, like Employee, a sales consultant.

Mr. Mason also testified that he did not tell Employee that participation in the mud run was required and that he had not been threatened with any adverse employment action had he been unable to get a team together or had he decided not to participate himself. He stated that, had he been unable to organize a team, he assumed the dealership would simply not enter a team or would look for participants elsewhere. He further indicated that he had not been instructed to attempt to sell cars at the mud run or staff the dealership tent.

---

[1] It is undisputed that the shirts contained no company logo and did not otherwise associate the team members with Employer or its dealership.

Mr. Triplett, the dealership's general manager, testified that he believed sponsorship of events like the mud run was an important element of being a good corporate member of the community. He testified that Employer had sponsored a number of community events over the years and, while some employees participated in some of those events, participation was never mandatory. While the mud run organizers had allotted teams to the dealership in the past, Mr. Triplett had not previously asked that a team be organized, giving those entry spots to others who wanted to form a team instead, such as specific employees or family members who expressed a desire to participate. In the past and at the event in question, the teams fielded from Employer's allotment were not required to wear clothing or engage in any other conduct identifying themselves as being associated with Employer.

In addition, Mr. Triplett testified that he had decided to put together a team on this particular occasion because it would be fun and because his children had put "peer pressure" on him to enter, telling him he was "too old, too fat, and too slow to do it." He stated, "I'm sitting there with two unclaimed teams. And it's not that big a deal. Nobody would notice if we weren't there, probably. But I didn't want them to completely go to waste either, and I thought it would be fun." He stated that, while he believed it would be beneficial to have a team entered in the mud run, he did not believe the business would suffer if it failed to enter a team.

Finally, Mr. Triplett did not "shame" any employee who declined to participate in the mud run and, in fact, was unaware of who had refused to be on the team. He testified that he did not consider participation in the event to be a part of the participants' work duties. When asked what, if any, action he would have taken had Employee declined to participate, he testified that "short of personal disappointment," there would have been no adverse employment consequences. Mr. Triplett testified that he did not "lean" on Employee or anyone else to join the team.

At trial, Employer argued that Employee's participation on the team was not associated with his work duties, as it was a recreational event in which participation was purely voluntary. By contrast, Employee took the position that because he was pressured into joining the team, participation was a part of his work duties. The trial court agreed, concluding that Employee's participation in the mud run was impliedly required and was a part of his work-related duties. The court awarded benefits in the form of reimbursement of Employee's out-of-pocket expenses and payment of the medical bills associated with his treatment. The trial court also awarded Employee's attorney a fee based on Employee's out-of-pocket expenses.

Employee filed a post-trial motion asking the trial court to reconsider the issue of attorney's fees, arguing that the medical expenses associated with treating his injury were a part of his recovery or award and, thus, his attorney should be entitled to calculate his fee on the basis of the medical bills, not just the out-of-pocket expenses. The trial court

4

agreed and awarded Employee's attorney a fee based on the out-of-pocket expenses as well the medical bills Employer was ordered to pay.

Employer has appealed, arguing that the trial court erred in finding Employee's injury to be compensable, as participation in the mud run was not required and was not a part of his work duties. Employee responds that his participation was, in fact, required as a part of his work-related duties. For the reasons that follow, we reverse the trial court's decision and dismiss the case.

**Standard of Review**

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;
(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015).

**Analysis**

**A.**

It has long been the general rule in Tennessee that injuries sustained while an employee is voluntarily engaged in a recreational activity are not compensable as work-related accidents. Indeed, as far back as 1932, the Tennessee Supreme Court observed that "where an employe[e] departs from his work to engage in a sportive act that is in nowise connected with his employment, or incidental thereto, he cannot recover for an injury resulting from such act." *Hawkins v. Nat'l Life & Accident Ins. Co.*, 46 S.W.2d 55, 56 (Tenn. 1932).

More recently, our Supreme Court was confronted with a case involving an employee who drowned while boating on his lunch break. *Jordan v. United Methodist Urban Ministries, Inc.*, 740 S.W.2d 411 (Tenn. 1987). The employee and other workers

5

were being trained in construction work and were allowed to eat their lunch by a lake a short distance away from their worksite. *Id.* at 412. The workers found a boat and rowed it out onto the lake. *Id.* The employee jumped from the boat to swim to shore and drowned. The Supreme Court concluded that the employee's conduct "constituted a complete departure from the scope and course of [the] employment." *Id.* Accordingly, death benefits were denied. *Id.*

Shortly after *Jordan* was decided, the Supreme Court again addressed recovery for injuries sustained while engaged in recreational activities. In *Ward v. Mid-South Home Serv.*, 769 S.W.2d 486 (Tenn. 1989), the employee, a construction worker, suffered an injury playing basketball at a customer's home during a lull in the work. Denying his claim for benefits, the Supreme Court noted that "compensation has been awarded only when recreational or social activities are shown to be a regular incident of the employment or under circumstances where the employer requires participation or otherwise derives some substantial direct benefit from the activity." *Id.* at 487. Because the recreational activity in which the injured worker was engaged was "purely for [his] own entertainment and amusement," he was not within the course and scope of his employment when he was injured and, therefore, was not entitled to recover workers' compensation benefits. *Id.*

In still another case, *Tucker v. Acme Boot Co.*, 856 S.W.2d 703 (Tenn. Workers' Comp. Panel 1993), the Special Workers' Compensation Appeals Panel was faced with a situation in which, unlike the employees in *Jordan* and *Ward* who were injured during their working hours, the employee was injured while participating on a softball team organized by a co-worker. Employees were not required to participate, and the employer did not expressly sponsor the team. *Id.* at 704. However, the employer encouraged employees to participate, paying the team's league entry fee, paying a lighting fee for practices, providing equipment and shirts displaying the employer's logo, and awarding "aerobic bucks" to employees who participated, which could be exchanged for prizes. *Id.* The Court in *Tucker* followed the analysis in *Jordan* and *Ward* and adopted the following test to determine whether an injury sustained while participating in a recreational activity is compensable:

> [R]ecreational or social activities are within the course of employment when (1) they occur on the premises during a lunch or recreational period as a regular incident of the employment, or (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of the employee, brings the activity within the orbit of the employment, or (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

6

*Id.* at 705. The Panel in *Tucker* determined that the employee's injury was not made compensable by either of the first two factors, as the injury did not occur on the employer's premises and participation in the softball league was not required. *Id.* Furthermore, the Panel concluded that the employee's participation was not of a nature to provide a benefit to the employer beyond the benefits inherent in any "refreshing social and recreational" activity. *Id.*

Subsequently, the test adopted in *Tucker* was applied in a case in which the employee was injured at a car race sponsored by the employer. In *Cameron v. Fireman's Fund Ins. Co.*, No. E1998-00678-WC-R3-CV, 2000 Tenn. LEXIS 725, at *2 (Tenn. Workers' Comp. Panel Dec. 15, 2000), the employer held a "race night" several days in advance of the race and required some employees to attend and perform certain functions, although the employee who was injured had no duties at the actual race where she was injured. *Id.* at *3-4. The Panel concluded that none of the factors enumerated in *Tucker* brought the employee's claim within the ambit of workers' compensation. *Id.* at *9-10. The injury did not occur on the employer's premises, attendance at the race was not required, and there was no evidence the employer received a benefit from the employee's participation. *Id.* Hence, the employee was not entitled to a recovery.

In yet another recreational activity case, *Young v. Taylor-White, PLLC*, 181 S.W.3d 324 (Tenn. 2005), the Supreme Court considered whether an employee who was injured participating in a three-legged race at a company picnic could recover workers' compensation benefits. The picnic was held outside of normal work hours at a public park. *Id.* at 326. Although employees had to sign up to attend the picnic and check in upon arrival, attendance was not required. *Id.* at 327. There were no negative consequences for not attending, and no one was paid to attend. *Id.* In its analysis of the case, the Supreme Court noted that "the voluntary nature of the activity, rather than the fact that the activity occurs on the employer's premises or provided a benefit to the employer, is the touchstone for determining whether the injury occurred during the course of employment." *Id.* at 329. The Court determined that, although others encouraged the employee to participate in the three-legged race, her participation in the race was voluntary. Thus, an award of benefits was reversed.

Finally, in 2007, the Supreme Court again considered the parameters of compensable injuries in the context of recreational activities. In *Gooden v. Coors Tech. Ceramic Co.*, 236 S.W.3d 151 (Tenn. 2007), the employee suffered a fatal heart attack playing basketball during a regular work break. *Id.* at 153. There was no dispute that playing basketball contributed to the employee's heart attack or that supervisors occasionally joined employees playing basketball. *Id.* at 154. The trial court denied benefits, finding the employee had pre-existing heart disease and that the injury did not arise out of the employment. The Supreme Court reconsidered its identification of the voluntary nature of the employee's activity as the "touchstone" of the analysis, observing that it was "not a judicious use of the term" and that "[e]levating this factor above all

7

others would be a clear departure from our traditional emphasis on 'the time, place, and circumstances of the injury.'" *Id.* at 155. Addressing the circumstances surrounding the employee's death, the Court held that the employer's "acquiescence combined with the regularity of the basketball games made the games an incident of [the employee's] employment." *Id.* at 156.

Against this extensive backdrop of case law, the General Assembly, in 2009, adopted Tennessee Code Annotated section 50-6-110(a)(6), which was unchanged by the 2013 Workers' Compensation Reform Act. In keeping with the long-held view that injuries resulting from "refreshing social and recreational" activities are generally not compensable, *Tucker*, 856 S.W.2d at 705, the statute declares that an injury is not compensable if it occurs as a result of "[t]he employee's voluntary participation in recreational, social, athletic or exercise activities, including, but not limited to, athletic events, competitions, parties, picnics, or exercise programs, whether or not the employer pays some or all of the costs of the activities." Tenn. Code Ann. § 50-6-110(a)(6). However, benefits may be awarded if the activity falls into one or more of the following exceptions:

(A)     Participation was expressly or impliedly required by the employer;

(B)     Participation produced a direct benefit to the employer beyond improvement in employee health and morale;

(C)     Participation was during employee's work hours and was part of the employee's work-related duties; or

(D)     The injury occurred due to an unsafe condition during the voluntary participation using facilities designated by, furnished by or maintained by the employer on or off the employer's premises and the employer had actual knowledge of the unsafe condition and failed to curtail the activity or program or cure the unsafe condition.

*Id.* The statute further provides that if an employer "defends on the ground that the injury arose in any or all of the ways stated in subsection (a)," which includes a number of defenses in addition to the recreational activity defense, "the burden of proof shall be on the employer to establish the defense." Tenn. Code Ann. § 50-6-110(b).[2]

---

[2] While the statute is clear that the burden of establishing the defense set out in section 50-6-110(a)(6) lies with the employer, it is less clear who bears the burden of proving the existence or absence of the exceptions set out in subsections (A)-(D). Employer takes the position that an employee must establish any applicable exception before an employer is obligated to present proof that any such exception does not apply. Employee, on the other hand, asserts an employer bears the burden of disproving each exception and that an employee bears no burden of proof once an employer asserts the defense. While we acknowledge the statute can be interpreted in different ways, we need not resolve this issue in the present

8

**B.**

Guided by the foregoing principles, we return to the facts of this case. The trial court concluded that Tennessee Code Annotated section 50-6-110(a)(6)(A) and (C) applied, finding that Employee was impliedly required to participate in the mud run and that it was a part of his job duties. According to the trial court, Employee's "work assignment was to participate in the mud run." We disagree.

*Participation Impliedly Required*

With respect to whether Employee's participation in the mud run was "impliedly required" within the meaning of section 50-6-110(a)(6)(A), the proof is uncontradicted that Employee would not have faced any adverse employment consequences if he declined to participate. Mr. Mason, the salesman tasked with assembling the team, testified that he asked Employee to be on the team because Employee was in good physical condition and "enjoyed that kind of thing." According to Mr. Mason, Mr. Triplett never told him that participation was required and he, in turn, never told Employee that participation was a part of his job duties. In fact, when Mr. Mason experienced difficulty filling the team, he told Employee that Employee was "our last choice and I need you to do it *if you can*." If Employee had been required to participate, there would have been no need for Mr. Mason to ask him to join the team several times, and only then "if [he] can."

We also note that Mr. Mason was Employee's friend and co-worker, not his supervisor, undercutting any implication Employer coerced Employee to participate. While Mr. Mason did pressure Employee to participate, he did so because it would be "fun" and they would be able to "get out of work for a few hours." He never told Employee participation was required. Mr. Mason did not believe anyone would have suffered negative consequences for declining to participate. Further, Mr. Triplett never suggested to Mr. Mason that he or anyone else would suffer adverse consequences if he did not put together a team.

For his part, Mr. Triplett, the general manager of the dealership, testified that he believed entering a team in the mud run would be "fun," that participation was "definitely voluntary," and that he would not and did not take any adverse employment action against anyone who declined to participate. In fact, he did not know who was being asked to participate or who declined to do so, and he did not "shame" or discipline anyone for not participating. Moreover, Mr. Triplett did not consider participation to be a part of Employee's job duties, and he did not "lean" on Employee or anyone else to participate. This evidence was undisputed.

---

appeal because, regardless of whether the statute contemplates a shifting burden of proof, the evidence preponderates against the trial court's finding of compensability.

9

Employee himself acknowledged that he did not believe any negative employment action would be taken against him if he declined to be on the team, and that the only adverse effect of a refusal to participate would be disappointing Mr. Triplett and the rest of the mud run team. He testified that he viewed Mr. Triplett as a "father figure" and did not want to let him down. However, while he stated he felt pressured to participate, he did not fear any negative consequences to his job had he declined to participate. Nor was he told by anyone that he was obligated to participate.

Employee also acknowledged that the reason he was asked to join the team was because he was physically fit and Mr. Mason needed someone who could complete the course. Other dealership employees declined to participate and suffered no adverse employment actions. According to Employee, no one was "shamed," "fired," or "in any way disciplined" for failing to participate so far as he knew. Although Employee may have felt peer pressure to participate, such pressure is an inherent part of most competitive events of this nature. Whether Employee felt peer pressure to participate is not the determinative issue. Rather, the question is whether pressure was applied by the employer amounting to an express or implied *requirement* to participate. Based on this record, it did not.

Furthermore, while Employer was associated with a vendor tent at the event, the evidence was unrefuted that no employees were required to staff the tent. Also, the team did not wear any clothing identifying them as being associated with Employer. In addition, Employee was not on the clock while at the event, and Mr. Triplett used his influence to obtain an earlier start time so the employees could get back to the dealership *and work*. The proof was unrefuted that no employee was paid to participate and there were no prizes or incentives to do so.

Considering these circumstances as a whole, we conclude that the evidence does not support the trial court's finding that Employee's participation in the mud run was "impliedly required" within the meaning of section 50-6-110(a)(6)(A).

*Part of Employee's Work-Related Duties*

The trial court also found that section 50-6-110(a)(6)(C) applied, determining that participation in the mud run occurred during working hours and was a part of Employee's work duties. This finding is likewise not supported by the weight of the evidence.

While it is undisputed that the mud run occurred during normal working hours, a Saturday morning, the record is devoid of evidence to support a finding that it was part of Employee's work duties. Employee was not paid for his time away from the dealership to participate in the event, which was one of his central reasons for initially declining to be on the team. He was not required to attempt to sell vehicles or network, was not required to staff Employer's tent, and did not wear any clothing to identify him as an

employee of Employer. Employee did not identify any work duty he was expected to perform at the mud run. Instead, he merely expressed his opinion that participation was part of his work duties and that he was there in a representative capacity. However, it is unclear how he could have been representing Employer, as it was not readily apparent to anyone attending the event that he worked for Employer.

In short, the preponderance of the evidence establishes that Employee's participation in the mud run, while perhaps the product of peer pressure, was in no way required by Employer. The proof is clear and uncontradicted that, had Employee refused to participate altogether, he would have faced no adverse employment consequences. Moreover, there is no evidence that Employee was performing any work duties while at the mud run. In fact, the proof is to the contrary, as Employee did not staff Employer's tent, did not wear anything to identify him as an employee of Employer, and he wanted to complete the course quickly so he could get to work. Accordingly, the trial court's decision is reversed.

## C.

The second issue presented for our review concerns the trial court's decision regarding attorney's fees. Initially, the trial court declined to award attorney's fees based on the amount of medical expenses Employer was required to pay, more than $19,000 and, instead, awarded fees based only on Employee's out-of-pocket expenses of approximately five hundred dollars. However, upon reconsideration, the trial court determined Employee's attorney was entitled to a fee based upon both the out-of-pocket expenses and the medical bills Employer was ordered to pay.

Employer asserts that the pertinent statute, Tennessee Code Annotated section 50-6-226, does not contemplate including the cost of medical care in the calculation of attorney's fees.[3] Employer maintains that recent changes to this statute, which were not in effect on the date of the injury in this case, contemplate such payments and that, had the legislature intended an employee's attorney recover a fee on the basis of medical expenses, such an amendment would have been unnecessary.[4] Employee responds that, in a case such as this where all benefits were denied, the medical expenses are properly

---

[3] *See* Tenn. Code Ann. § 50-6-226(a)(2)(A) (2015) ("Medical costs that have been voluntarily paid by the employer or its insurer shall not be included in determining the award for purposes of calculating the attorney's fees.").

[4] Tennessee Code Annotated section 50-6-226(d)(1)(B) provides that the trial court may award reasonable attorney's fees and costs when an employer "[w]rongfully denies a claim by filing a timely notice of denial, or fails to timely initiate any of the benefits to which the employee is entitled under this chapter, including medical benefits under § 50-6-204 or temporary or permanent disability benefits under § 50-6-207, if the workers' compensation judge makes a finding that such benefits were owed at an expedited hearing or compensation hearing." Although referenced by the parties in their briefs and at oral argument, this statute applies only to claims for injuries occurring on or after July 1, 2016.

11

considered part of an employee's award and, thus, his attorney is entitled to fees associated with the payment of those benefits. *See* Tenn. Code Ann. § 50-6-226(a)(1) ("[N]o attorney's fees to be charged employees shall be in excess of twenty percent (20%) of the amount *of the recovery or award* to be paid by the party employing the attorney. The [Bureau of Worker's Compensation] shall deem the attorney's fee to be reasonable if the fee does not exceed twenty percent (20%) *of the award* to the injured worker . . . .") (Emphasis added.).

However, because we have determined that the trial court erred in finding Employee suffered a compensable injury, the issue of whether the trial court properly calculated attorney's fees is pretermitted.

## Conclusion

For the foregoing reasons, we hold that the evidence preponderates against the trial court's decision and violates section 50-6-217(a)(3)(A) and (E). Accordingly, the trial court's decision is reversed and the case is dismissed. The trial court's order, as reversed, is certified as final.[5]

---

[5] *See* Tenn. Code Ann. § 50-6-217(a)(2)(B) (2015) ("If a compensation order is timely appealed to the appeals board, the order issued by the workers' compensation judge shall not become final . . . until the workers' compensation appeals board issues a written decision certifying the order as a final order.").



FILED

November 28, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:18 P.M.

**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Gregory E. Pope | ) | Docket No. 2015-01-0010 |
| | ) | |
| v. | ) | |
| | ) | State File No. 65681-2014 |
| Nebco of Cleveland, Inc., d/b/a | ) | |
| Toyota of Cleveland, et al. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 28th day of November, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **William J. Brown** | | | | | X | wjb@vollaw.com |
| **Jennifer Orr Locklin** | | | | | X | jennifer.locklin@farrar-bates.com |
| **Thomas Wyatt, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov