**FILED**

**July 23, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 7:15 AM**



# COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Karen Quinn, | )    Docket No.: 2015-06-0025 |
|          Employee, | ) |
| v. | )    State File No.: 3004/2015 |
| | ) |
| SMX, | )    Date of Injury: November 21, 2014 |
|          Employer, | ) |
| And | )    Chief Judge Kenneth M. Switzer |
| | ) |
| New Hampshire Insurance Company/ | ) |
| Gallagher Bassett, | ) |
|          Insurance Carrier/TPA. | ) |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on July 1 and 20, 2015, upon the Request for Expedited Hearing filed by Karen Quinn (Ms. Quinn), the Employee, on April 7, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, SMX, is obligated to provide medical benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. Quinn is ineligible for the requested relief at this time.

## ANALYSIS

### Issues

- Whether Ms. Quinn sustained an injury that arose primarily out of and in the course and scope of her employment with SMX.

- Whether Ms. Quinn suffered from a pre-existing condition that was aggravated by a work-related injury[1].

---

[1] The Mediation Specialist checked this as an issue on the Dispute Certification Notice. However, in light of Ms.

1

- Whether SMX is obligated to provide Ms. Quinn a panel of physicians.

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Certified Medical Records, AmCare, 3 pages,
2. Affidavit of Karen Quinn, May 26, 2015, 6 pages,
3. Audio recording of Ms. Quinn's Statement to Adjuster,
4. "Non-Work Related Declaration," blank, filed on May 28, 2015,
5. "Non-Work Related Declaration," signed by Ms. Quinn on December 1, 2014; original document, 1 page,
6. Affidavit of Lisa Maddox, undated, 1 page,
7. Form C-20, First Report of Injury, January 9, 2015,
8. Certified Medical Records, Target Pharmacy, May 28, 2015, 4 pages,
9. Memo to Amber, SMX Management, from Ms. Quinn, December 4, 2014, and "Addendum & Correction," 4 pages,
10. "Accident/Injury November 21, 2014," March 9, 2015, 2 pages,
11. Email from Herb Harlen to Ms. Quinn, December 2, 2014,
12. "Supportive Feedback Document," final written warning, November 22, 2014,
13. Email from Ms. Quinn to Herb Harlen, November 25, 2014,
14. Email from Ms. Quinn to Herb Harlen, November 20, 2014, and
15. Certified mail receipt, SMX/AmCare/Michelle Ammerman.

The Court designated the following as the technical record:

- Petition For Benefit Determination (PBD), January 13, 2015,
- SMX's Position Statement: Email to Mediation Specialist, February 4, 2015,
- Dispute Certification Notice (DCN), March 18, 2015,
- Ms. Quinn's Position Statement: "Accident/Injury November 21, 2014," and
- Request For Expedited Hearing (REH), April 7, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

---

Quinn's testimony that she never sustained a previous back injury prior to the alleged date of injury, and she made no arguments advancing a position on this issue, the Court considers it waived.

The following witnesses testified during the hearing:

- Ms. Quinn
- Herb Harlen
- Robert Fratsch
- Michelle Ammerman
- Amber Weisenhutter (by telephone)
- Wesley Brooks (by telephone).

**History of Claim**

Ms. Quinn is a fifty-seven (57)-year-old resident of Davidson County, Tennessee. She filed a PBD with the Bureau of Workers' Compensation on January 13, 2015, seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed the DCN on March 18, 2015. Ms. Quinn filed an REH on April 7, 2015.

At the Expedited Hearing, Ms. Quinn testified that she holds bachelor's and master's degrees from Vanderbilt University, and she is a Tennessee Supreme Court Rule 31 Certified Mediator. She alleged a low-back injury (PBD, p. 1), and testified that she never suffered a previous back injury.

Ms. Quinn's employment with SMX, a staffing agency, began on October 31, 2014. SMX placed her at the Amazon.com Distribution Center in Lebanon, Tennessee, as a "picker." She testified, reading largely from her Affidavit (Ex. 2), that, on the morning of Friday, December[2] 21, 2014, she scanned a large, long box that contained a Rockwell steel workbench. Because she was unable to find anyone to assist her, she moved the box herself onto a cart. Afterward, her back felt sore and strained. She continued to work, moving several other heavy boxes.

According to Ms. Quinn, that afternoon, her supervisor, Ms. Weisenhutter, gave her a "final written warning" for one hour and fifteen (15) minutes' time off task. Ex. 12. Ms. Quinn testified that Ms. Weisenhutter did not allow her to read the document, nor did she sign it. The Court notes that the warning, entitled "Supportive Feedback Document," bears Ms. Quinn's signature. It states that Ms. Quinn received the warning for an incident on November 21, 2014, and is dated November 22, 2014.

Ms. Quinn testified that the following morning, she could barely walk without bending over and holding on to nearby objects. She went to work and told an Amazon supervisor, "Jake," about the injury. According to Ms. Quinn, he did not tell her to go to

---

[2] Ms. Quinn testified that the date of injury was December 21, 2014, but clarified on cross-examination that she meant November 21, 2014. The latter date appears on all forms she filed with the Bureau and her Affidavit, Ex. 2.

3

Amazon's onsite clinic, AmCare, nor did he report the injury. Rather, he suggested she get ice at AmCare. Because she did not think ice would help, she did not go.

On November 28, 2014, she reported the injury to Ms. Weisenhutter in an attempt to explain the time off task. Per Ms. Quinn, Ms. Weisenhutter escorted her to AmCare. At the clinic and in Ms. Weisenhutter's presence, Ms. Quinn explained how she injured herself to an EMT (emergency medical technician). Per Ms. Quinn, Ms. Weisenhutter then asked her to sign a document, which she initially thought was an injury report but later realized was a "Non-Work Related Declaration." Ms. Quinn did not indicate whether she signed the document, which neither party introduced into evidence.

The AmCare records documenting the November 28, 2014 visit (*See generally* Ex. 1) provide, "AA stated that she was at home and noticed her back began to hurt before she got into bed on 11/16/2014." The cause is "unknown," and the date of onset is "11/16/2014." The records do not classify the injury as "new," but read, "AA stated that her lower back has been injured in the past when she was a yoga instructor – exact date unknown." The notes further provide:

> AA stated that she noticed that her back had started to hurt at home before bed on 11/16/2014, the next morning she came to work and states that it was a little sore but she thought it would work its self [sic] out and it was a little better by the end of the day when she went home. AA returned to work on Tuesday 11/18/2014 and states it was more sore that morning so she told Jake – Jake advised her to go to AMCARE but she stated that she didn't think they could do anything for her so she chose NOT to go to AMCARE. AA came to AMCARE on 11/28/14 stating that her back was sore and that she had been lifting items that said team lift by herself with no help . . . AA stated she had a prior back issue years ago when she was teaching yoga and had just recently been teaching yoga classes to seniors.

According to Ms. Quinn, after Ms. Weisenhutter left the AmCare Clinic on November 28, 2014, the EMT applied Biofreeze spray to her lower back. Upon the EMT's advice, Ms. Quinn returned on the mornings of November 29 and 30, 2014, for additional Biofreeze applications. During the AmCare treatments, per Ms. Quinn, she never mentioned that she taught yoga, or that she sustained a previous back injury while doing yoga.

Ms. Quinn had a conversation with Mr. Fratsch, SMX's Safety Manager, in which she told him she sustained a work-related injury. According to Ms. Quinn, Mr. Fratsch asked her to sign a document verifying that he previously provided safety training. Ms. Quinn testified that the document was on a clipboard and was rolled in such a manner so that she could not read the entire document. She signed it "with trepidation." After their conversation ended, she overheard an exchange between Mr. Fratsch and Ms.

4

Weisenhutter, in which Ms. Weisenhutter asked, "Did you get her to sign it?" He responded affirmatively, and Ms. Weisenhutter said, "Good."

Ms. Quinn did not work from December 2 through 4, 2014. On December 5, 2014, SMX terminated her. Ms. Quinn testified that, at the time, the back pain persisted and it still persists.

On cross-examination, Ms. Quinn testified that she injured her back on the same day she received the written warning. Ex. 12. She said lifting the steel bench injured her back, but she subsequently lifted other heavy boxes as well. Her injury was not cumulative. Although she awoke with pain the following day, it subsided enough so that she could work. Ms. Quinn acknowledged that she did not go to AmCare, or seek any other medical treatment, from November 22 through 27, 2014, because she believed she strained a muscle and hoped, with rest, it would improve.

She testified that she disagrees with the contents of the AmCare records, and in particular the references to yoga. She agreed that she taught yoga to seniors, but stopped a couple of weeks before her work began at SMX. Ms. Quinn acknowledged that many people at SMX knew she taught yoga as a volunteer instructor, and she might have listed yoga as an activity on her job application. She stated that SMX possibly shared that information with Amazon, and, "If they did – went back and looked at that, they shared that with Amazon. So Amazon is clearly in collusion with SMX over this information in their progress notes. Because it's nothing I have ever said to Amazon. Nothing." She further testified, referring to the AmCare records, that, "It's pretty accurate to say that this entire page is nothing but a manufactured statement. Nothing on here is the truth. I never had these extensive conversations with any of these people."

With regard to the "Non-Work Related Declaration," (Ex. 5), Ms. Quinn conceded that it bears her signature:

> As best I can tell. I don't think it'd be that hard to – In fact, I think it would be quite easy to Photoshop. I signed so many things, and that's what the recording would testify to, is that I signed so many things and dated so many things that signing something was just another thing. I signed things constantly.

She reiterated that the significance of the document was not explained to her. Ms. Quinn acknowledged it looks like her signature, but insisted the paper was turned back, or that she thought it related to her training and never saw the title.

Ms. Quinn agreed that she told an acquaintance, Mr. Harlen, in a December 2, 2014 email that Mr. Fratsch "had me sign something yesterday that I'm sure had to do with responsibility for hurting my back." Ex. 11. She explained she realized that only

5

after overhearing the subsequent conversation between Ms. Weisenhutter and Mr. Fratsch. Ms. Quinn added, regarding the "Non-Work Related Declaration" discussed in the email that, "I am positive I did not know what it was," and, "I signed it for what he said it was." Ms. Quinn said it was attached to a clipboard when she signed it. She could not recall how many other documents she signed on December 1, 2014, but it was the only document she signed during her conversation with Mr. Fratsch.

Ms. Quinn called Ms. Weisenhutter as a witness. Ms. Weisenhutter testified that she issued the warning (Ex. 12) on November 22, 2014, regarding conduct on that day for three hours' time off task. She acknowledged she did not give Ms. Quinn a copy of the document. Ms. Weisenhutter did not recall accompanying Ms. Quinn to her office at the end of Ms. Quinn's shift on November 21, 2014, but rather stated she did this on November 22, 2014, to discuss the time off task.

Ms. Weisenhutter initially testified that she did "not recall" what happened on November 28, 2014, and subsequently stated four times that she did not accompany Ms. Quinn to the AmCare Clinic on that date. According to Ms. Weisenhutter, she did not learn of the injury until after that date. She denied being present during the conversation with the AmCare EMT on November 28, 2014, as well as asking Ms. Quinn to sign any documents. Ms. Weisenhutter testified that she had no conversations with AmCare staff on that date. She conceded that Amazon notifies SMX when SMX employees seek treatment at the AmCare clinic, so that SMX can complete reports regarding whether the reason for treatment is work-related or non-work related. Ms. Weisenhutter maintained she received no notice or information concerning Ms. Quinn from AmCare, and said she did not know if others at SMX communicated with AmCare. Ms. Weisenhutter testified she generally handles supervision and disciplinary matters rather than safety matters.

Ms. Weisenhutter did "not recall" a conversation with Ms. Quinn on Friday, November 28, 2014. She testified that she needed to speak with Ms. Quinn regarding time off task and any "barriers" reasonably causing time away from her duties prior to the termination, so perhaps she spoke to her on December 4, 2014. Ms. Weisenhutter additionally remembered a conversation with Ms. Quinn where "you did state, um, that you had hurt your back lifting a heavy item," but said it occurred when she terminated Ms. Quinn. Ms. Weisenhutter said it was not unusual that she did not receive information regarding Ms. Quinn's treatment at AmCare on four occasions. Ms. Weisenhutter explained that policy provides that, when an SMX employee seeks treatment at AmCare for a work-related injury, AmCare notifies SMX immediately.

Ms. Weisenhutter agreed she worked with Ms. Quinn "closely," but did not know about her AmCare treatments because Ms. Quinn did not mentioned it to her until the termination. Ms. Quinn identified "no barriers," or acceptable reasons for time off task, according to Ms. Weisenhutter. Ms. Weisenhutter did not remember Ms. Quinn asking for a different position after receiving treatment at AmCare, and subsequently said she

6

did not make that request. Ms. Weisenhutter did not remember anything from Ms. Quinn's December 1, 2014 visit to the AmCare Clinic.

On cross-examination, Ms. Weisenhutter maintained that Ms. Quinn did not mention a back injury during their November 22, 2014 conversation. On redirect, Ms. Weisenhutter did not remember talking to Mr. Fratsch on December 1, 2015, and in particular asking if he obtained Ms. Quinn's signature on any documents. Ms. Weisenhutter testified that she only recalled conversations with Mr. Fratsch after Ms. Quinn's termination, during which he told her twice that Ms. Quinn might be returning to the facility regarding a claimed work-related injury.

SMX called Mr. Fratsch, its safety manager, who testified that his first encounter with Ms. Quinn occurred on December 1, 2014. He said on that date, at approximately 11:00 a.m., he received a call from staff at AmCare informing him of Ms. Quinn's presence. He went to AmCare and discussed the situation with Ms. Ammerman and Ms. Quinn. According to Mr. Fratsch, Ms. Ammerman gave a synopsis of her notes, including that Ms. Quinn experienced pain before going to bed on November 16, 2014.

Mr. Fratsch testified that the "Non-Work Related Declaration" documents are utilized when an employee seeks treatment at AmCare for any non-work related condition, such as high blood pressure or if he or she were involved in a car accident outside of work. He said that he asked Ms. Quinn if her injury occurred at work and she replied no. According to Mr. Fratsch, he laid the document flat on a table and explained to her what it was. The document was not held on a clipboard, per Mr. Fratsch, due to an Amazon policy prohibiting the use of clipboards because they might "intimidate associates." The document was not obscured, and Ms. Quinn was not coerced into signing it, according to Mr. Fratsch. He testified that Ms. Quinn printed her name on the top of the document, in addition to signing and dating it.

On cross-examination, Mr. Fratsch testified that he did not approach Ms. Quinn about signing the "Non-Work Related Declaration" on the floor, but rather while she was at AmCare on December 1, 2014. Mr. Fratsch said he had no knowledge why AmCare failed to notify him prior to December 1, 2014, after Ms. Quinn received previous treatments, but said, "If it was a work-related injury of course I would've been called."

Per Mr. Fratsch, employees can avail themselves of Biofreeze. He agreed that, as the safety manager, AmCare staff should have informed him that an employee received treatments if the treatments were "excessive." He testified that he explained the document to Ms. Quinn and did not learn of her wish to report a work-related injury until after her termination. Mr. Fratsch said, on or about December 6, 2014, he received a message from Ms. Quinn and tried to reach out to her. When they spoke, Mr. Fratsch denied that Ms. Quinn requested to see a doctor. He testified that he reminded her of the "Non-Work Related Declaration," and asked her to come to the office to start the process,

7

to include offering a panel. He testified that he never had a conversation with Ms. Weisenhutter concerning Ms. Quinn signing the "Non-Work Related Declaration."

On redirect, Mr. Fratsch said his investigation did not reveal that Ms. Quinn's injury was work-related. On recross, he said that the investigation consisted of talking to the Ms. Ammerman in Ms. Quinn's presence, where Ms. Quinn said she experienced pain before bed on November 16, 2014; she woke up the next morning with lingering soreness; and she is a yoga instructor who previously injured her back. He repeated that he asked her specifically if she injured herself at work, and she said "no." Mr. Fratsch said that usually AmCare notifies him when an employee suffers a work-related incident or has a condition or injury affecting the employee's ability to work.

On questioning by the Court, Mr. Fratsch said Ms. Ammerman called him on December 1, 2014, to notify him that "a non-work related injury that had happened was being reported." Mr. Fratsch testified that a line appears on the original "Non-Work Related Declaration" because it is a printer mark, and, prior to obtaining Ms. Quinn's signature, he made a copy of the form from another blank copy that bore a printer mark. The document does not bear fold marks, and, upon close examination, indentations from a pen are visible on the document's backside.

Wesley Brooks, a loss prevention specialist with Amazon in its Lebanon facility, additionally testified[3] concerning video cameras directed toward the entrance to the AmCare Clinic and Amazon's video-retention policy. The videos are only retained for fourteen (14) days. There are no videos for the days in question. Mr. Brooks is the highest-ranking loss prevention specialist at the Lebanon location, and he is familiar with Amazon's video recording policies and, in particular, the recordings near the entrance to the AmCare Clinic.

Ms. Ammerman testified that she first saw Ms. Quinn at AmCare on November 28, 2014. Ms. Ammerman said that the rules require that, for a first visit, supervisors accompany SMX employees to the clinic. She could not recall whether Ms. Weisenhutter accompanied Ms. Quinn on that date. She stated that Ms. Quinn conveyed a history that her back began to hurt before going to bed on November 16, 2014. Ms. Quinn additionally told her she lifted heavy boxes earlier in the week, causing soreness. Ms. Ammerman maintained that Ms. Quinn never stated that the lifting incident

---

[3] Ms. Quinn subpoenaed the "Amazon Distribution Center" to appear at the Expedited Hearing with videotape footage from cameras near the AmCare entrance and waiting area on November 28 through December 1, 2014, for the timeframes she alleged she visited the clinic. Ms. Quinn additionally subpoenaed Amazon's "Senior Risk Management" to appear, bring the previously subpoenaed videotapes, and testify regarding Amazon's video retention policies. In response, Amazon wrote Ms. Quinn a letter from its Seattle, Washington headquarters, copying the Court, indicating that it was "unable to locate any responsive information to the subpoena because we hold video recordings only for a very limited period of time." The Court found this to be an improper response to the subpoenas. In the alternative, SMX proffered the telephonic testimony of Mr. Brooks. Through the Court's initial questioning of Mr. Brooks, the Court established his competence to testify in this matter.

happened on November 21, 2014. Rather, Ms. Ammerman assumed it happened on November 28, 2014. Ms. Ammerman applied Biofreeze spray on November 28, 2014. According to Ms. Ammerman, no one was in the room during the treatment, but someone from SMX might have been present while Ms. Quinn gave her history. Ms. Ammerman agreed that Ms. Quinn asked her to request that she be assigned different job duties. She explained:

> That was one of the reasons why, when you came in that day, you were sore, and you asked if I could have -- help have you moved to a different job, because you were afraid continuing in the path you were picking that day was going to – was going to injure your back, and you were not – it wasn't going allow you to rest it and let it get better.

Ms. Ammerman did not recall whether Mr. Fratsch was in the room with paperwork on November 28, 2014. Ms. Ammerman testified that Ms. Quinn told her she hurt her back several years ago doing yoga, and that she was previously a yoga instructor for seniors. She said she is careful when taking clinical notes and writes specific information.

Ms. Ammerman further testified that, on December 1, 2014, Ms. Ammerman created the electronic records. She explained that she made handwritten notes to help her create the electronic records, which are typically scanned into the records. She said it was not possible that she wrote incorrect dates because she makes written notes as she talks to patients. On cross-examination, Ms. Ammerman said that, as an EMT, she is obligated to accurately record conversations with employees, and that, had Ms. Quinn complained of a work-related accident or injury, she would have noted that in her records.

### Ms. Quinn's Contentions

Ms. Quinn argues the Court should view the "Non-Work Related Declaration" with suspicion, as companies are using these declarations to evade their obligation to provide medical benefits to injured workers. Ms. Quinn further asserts that Amazon and SMX collaborated to produce false testimony and documents.

Ms. Quinn alleges she hurt her back lifting a box that was not labelled "team lift" on to a cart. She denies a back injury prior to working for Amazon and maintains she never injured her back from practicing or teaching yoga. Ms. Quinn concedes she probably told Ms. Ammerman that she is a volunteer yoga instructor and likely told others as well, but that she never informed Ms. Ammerman that she injured herself doing yoga.

Ms. Quinn contends an MRI would verify that she sustained a recent injury and

9

soft-tissue damage. Ms. Quinn claims that Ms. Ammerman's testimony is unreliable because she did not take notes while in the treatment room,[4] nor can she remember who accompanied Ms. Quinn to AmCare. The medical records (Ex. 1) are "totally incorrect." The signature on the "Non-Work Related Declaration" (Ex. 5) is "probably" her signature.

## SMX's Contentions

SMX contends that Ms. Quinn failed to satisfy her burden of proof. SMX points out that the Court may not construe the Workers' Compensation Law in favor of either party. To find in Ms. Quinn's favor, SMX argues the Court must disregard Ms. Weisenhutter's testimony regarding Ms. Quinn providing no barriers to explain her time off task. Further, for such a finding, the Court must disregard all witness testimony, as well as the objective documentary evidence, including the medical records and the Non-Work Related Declaration. SMX asserts that Ms. Quinn, who holds a master's degree, is smart enough to know what she signed. Her subsequent email to Mr. Harlen confirms that she understood its significance.

The proof indicates that Ms. Quinn began to experience soreness in her low back from no specific cause. No competent proof establishes that the injury is work-related. Although the AmCare records noted that Ms. Quinn reported lifting heavy items, SMX asserts that Ms. Quinn likely made that statement to avoid a back injury, considering she also complained that her back was currently sore, and requested other job duties.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

---

[4] Ms. Quinn did not enter such proof, but rather made this statement in argument. The Court disregards it.

*Factual Findings*

Ms. Quinn's back started to hurt at home on November 16, 2014. Ms. Quinn received a final written warning from SMX and signed it on November 22, 2014. Ms. Quinn did not seek medical treatment for her low back pain until November 28, 2014. Ms. Quinn reported to AmCare that she lifted items marked team lift with no help. Ms. Quinn reported a prior back issue from teaching yoga. Ms. Ammerman made handwritten notes documenting Ms. Quinn's visits, but did not create and sign the electronic progress notes until December 1, 2014. Ms. Quinn sought treatment at the AmCare Clinic from November 28 through December 1, 2014, for low back pain. On December 1, 2014, Ms. Quinn knowingly signed a "Non-Work Related Declaration" regarding the alleged injury.

*Application of Law to Facts*

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). Injury is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014).

The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005).[5] An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. App. Panel 1993). Thus, the course of employment requirement focuses on the time, place and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the

---

[5] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. March 27, 2015).

11

work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Stated another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992).

In this case, Ms. Quinn testified in detail regarding a specific incident: lifting the Rockwell Steel Bench at work by herself on the morning of November 21, 2014. Ms. Quinn testified that it was November 21, 2014, and it was the same date she received the final written warning. Ex. 12. That document indicates it was created on November 22, 2014, and contains Ms. Quinn's signature. The AmCare record indicates that Ms. Quinn's back pain began November 16, 2014, while at home. The evidence conflicts regarding the date of the incident. Ms. Quinn failed to satisfy the "course of employment" requirement.

Ms. Quinn additionally failed to offer sufficient proof of causation at this time, as this Court cannot find a rational, causal connection between the alleged injury and Ms. Quinn's work.

The testimony conflicts substantially on numerous matters. Overall, Ms. Quinn's recitation of how she injured herself was thorough and sincere. However, the parties vigorously contested other significant facts. Ms. Quinn contended Ms. Weisenhutter accompanied her to the AmCare Clinic on November 28, 2014, and Ms. Weisenhutter presented a "Non-Work Related Declaration" to her on that date. Ms. Weisenhutter denied both assertions. Ms. Quinn asserted that Mr. Fratsch did not explain the "Non-Work Related Declaration," and that he concealed its title by folding it on a clipboard. Mr. Fratsch denied both assertions.

The Court finds that three of the central witnesses in this case – Ms. Quinn, Ms. Weisenhutter, and Mr. Fratsch – provided testimony that leads this Court to question their credibility. Ms. Quinn testified she did not sign the final written warning (Ex. 12), which bears her signature. She likewise testified she did not sign the "Non-Work Related Declaration," her signature could have been "Photoshopped," or if she did sign it, it was either obscured in part or, because Mr. Fratsch did not explain it to her, she did not understand what she was signing. These arguments are unpersuasive to the Court, which observes that the signature on the original document appears in ballpoint ink on the original document. The document bears no fold marks, diminishing her assertion that it was obscured in part on a clipboard. Mr. Fratsch's explanation that the line across the middle of the document is a photocopy mark is plausible. Moreover, assuming that Ms. Quinn previously saw the document when Ms. Weisenhutter presented it to her; given its simplicity; and given Ms. Quinn's advanced education, the Court rejects her contention that she did not understand what she signed.

In addition, the Court disbelieves Ms. Quinn's vehement assertions that *nothing*

within the AmCare records is accurate, and that SMX and Amazon colluded to falsify them. To the contrary, the author of these records, Ms. Ammerman, provided credible testimony regarding the events and conversations leading up to their creation. In *Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014), the Tennessee Supreme Court discussed witness credibility, holding that, "The Trial Court was in the best position to determine whether [the witness] sounded calm or agitated, at ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased." In this case, the Court finds that Ms. Ammerman sounded calm, at ease, self-assured, steady, confident, forthcoming, reasonable and honest.

With regard to Ms. Weisenhutter, this Court questions her overall credibility, given the number of occasions during her testimony where she could not recall particular events. Three memory lapses are contained in the "History of Claim" regarding her testimony, but there were additional instances where she testified she could not recollect in response to Ms. Quinn's questioning. Yet, she conceded that they worked together "closely." Moreover, the Court finds it difficult to believe, since one of Ms. Weisenhutter's tasks is to monitor employees' productivity and time off task, that AmCare would not notify her when an employee sought treatment. Ms. Weisenhutter's assertion that it did not is not credible.

Concerning Mr. Fratsch, he provided a significant inconsistency in his testimony. On one hand, he stated he had no knowledge why AmCare failed to notify him prior to December 1, 2014, after Ms. Quinn received previous treatments, but said, "If it was a work-related injury of course I would've been called." On the other hand, answering this Court directly, he stated that Ms. Ammerman called him on December 1, 2014, to notify him that "a non-work related injury that had happened was being reported."

Given the significant discrepancies in several witnesses' testimony and their credibility problems, this Court must rely principally upon the documentary evidence and Ms. Ammerman's testimony. As previously stated, the "Non-Work Related Declaration" is plain on its face; Ms. Quinn admits signing it; and Ms. Quinn has a level of education to know what she signed. The AmCare records, supplemented by Ms. Ammerman's testimony, further support the injury as non-work related.

In an Expedited Hearing, per *McCord, supra,* an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. The Court is additionally mindful of the Workers' Compensation Law's requirement that it be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. *See* Tenn. Code Ann. § 50-6-116 (2014). Ms. Quinn represented herself passionately and earned the Court's sympathy. Nonetheless, weighing the substantial evidence presented thus far, and considering that neither party is

13

to be favored when construing the law, the Court finds that Ms. Quinn has not come forward with sufficient evidence from which this Court may conclude that she is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Quinn's claim against SMX and its workers' compensation carrier for the requested medical benefits is denied.

2. This matter is set for Initial Hearing on September 2, 2015, at 10:00 a.m.

   **ENTERED this the 23rd day of July, 2015.**

   **Chief Judge Kenneth M. Switzer**
   **Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten (10) calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of July, 2015.    23rd

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Karen Quinn, Employee | X | | X | Karen.Quinn@mac.com; 57 3rd Ave. N., Mt. Juliet, TN, 37122 |
| Mike Newton, Employer's attorney | | | X | Mike.Newton@Leitnerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov