**FILED**

**December 16, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 9:05 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **Kathy Hamilton,**<br>　　　　　**Employee,** | **Docket No.: 2015-03-0156** |
| **v.** | **State File No.: 13067-2015** |
| **Kenco Logistics Services, LLC,**<br>　　　　　**Employer,** | **Judge: Pamela B. Johnson** |

**American Zurich Insurance Company,**
　　　　　**Insurance Carrier,**
**and**
**Genco Distribution Systems,**
　　　　　**Employer,**

**Liberty Mutual Insurance Company,**
　　　　　**Insurance Carrier.**

---

## COMPENSATION HEARING ORDER

---

This matter came before the undersigned Workers' Compensation Judge on November 10, 2015, for a Compensation Hearing, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Upon agreement of the parties and as set forth in the Agreed Initial Hearing (Scheduling) Order, the Court bifurcated this cause and agreed to adjudicate the issue of compensability separately and prior to the adjudication of the issue of compensation. Accordingly, the central legal issue is whether Ms. Hamilton sustained a compensable injury arising primarily out of and in the course and scope of her employment with Kenco Logistic Services, LLC (Kenco), or Genco Distribution Services (Genco).[1] For the reasons set forth below, the Court finds that Ms. Hamilton failed to establish by a preponderance of the evidence that she sustained a compensable injury primarily arising out of and in the course and scope of her employment with Kenco or Genco.

---

[1] A complete listing of the technical record, stipulations, and exhibits admitted at the Compensation Hearing is attached to this Order as an appendix.

## History of Claim

Ms. Hamilton is a fifty-eight-year-old resident of Knox County, Tennessee. Ms. Hamilton worked for Kenco at the GSK warehouse from 2007 through January 30, 2015. Ms. Hamilton worked in the cooler, picking cold product for packaging and shipping. Her job required her to pick product, pack the product into a box, and send the box down the line. She also picked freight, usually with the assistance of a helper. Ms. Hamilton testified that she did not lift anything heavy by herself but used common sense and her own judgment to determine whether she required assistance to lift freight or any other product.

GSK placed six of its warehouse locations up for bid, including the Knoxville area warehouse. As a result of the bid, Kenco lost its contract to operate the six GSK warehouses. GSK awarded Genco the contract to take over operations at the GSK warehouses on or about April 1, 2015. In preparation for the transition from Kenco to Genco, representatives of Genco, Kenco, and GSK jointly announced that GSK awarded the contract to Genco, which agreed to extend offers of employment to all Kenco employees contingent upon the employee receiving a clear criminal background check, passing a drug screen, completing a "Fit for Duty" pre-employment physical, and maintaining employment with Kenco until the transition date. No business relationship existed between Kenco and Genco.

In the fall of 2014, Ms. Hamilton learned GSK awarded Genco the contract to operate the GSK warehouse. She testified she took steps necessary to allow her to continue working at the GSK warehouse because she wanted to keep her job, she needed her job, and enjoyed her work. She took and passed the drug screen.

On Friday, January 30, 2015, Ms. Hamilton began the pre-employment, "Fit for Duty" physical examination. She scheduled the pre-employment physical exam on a day she was scheduled off from work at Kenco. During the pre-employment physical, she injured her back when she lifted a fifty-pound weight as part of the exam. She testified she felt and heard her back pop. After she hurt her back, she was unable to continue the exam.

The pre-employment, "Fit for Duty" physical exam took place at Nova, an off-site medical facility. Genco paid Nova to administer the physical exam. Neither Kenco nor Genco operated the medical facility or administered the exam. No representatives of Kenco or Genco were present at the time of the exam. Ms. Hamilton was not "clocked-in" or working for Kenco or Genco at the time of the exam. She was not performing any job duties for Genco or Kenco at the time of the exam. She did not receive a paycheck from Kenco or Genco for her participation in the exam.

Ms. Hamilton testified that Genco had not hired her at the time she participated in

2

the pre-employment, "Fit for Duty" physical exam. She further admitted that Genco never hired her. She signed a "Physical Performance Evaluation Consent, Waiver & Release Form," wherein she acknowledged, "No person or entity has coerced or forced me to take the PPE and my decision to participate is made voluntarily." (Ex. 2.) She chose to apply with Genco, but admitted she could have sought employment elsewhere.

On the date of the exam, Ms. Hamilton sought medical care from her primary care physician, Dr. Robert E. Wilson at Halls Walk-In Clinic. She required follow-up care from Dr. Wilson on the following Monday, who referred her to an orthopedic specialist. She subsequently came under the care of Dr. James K. Maguire, Jr., who diagnosed her with a superior endplate compression fracture at L1 and degenerative disc disease. She received conservative treatment, including physical therapy. She also received long-term disability benefits, and Blue Cross Blue Shield paid some of her medical expenses for her back treatment.

Ms. Hamilton received a $50.00 gift card from Brenda Hurst, an "admin person" or receptionist, who worked at the GSK warehouse. Ms. Hurst presented the gift card to Ms. Hamilton at or near the time of her mother's funeral. She also received a love offering from her fellow employees.

At the Compensation Hearing, Denise Stewart, a Genco representative, testified that Genco did not pay the applicants to take the exam. However, because the exam took three to four hours to complete and the applicants were "clocked-out," Genco offered the applicants a coupon. If the applicants completed the hiring process and became Genco employees, then the employees could trade in their coupon for a $50.00 gift card. Ms. Stewart testified that the gift card was a gratuity, a "perk," and not required to be paid.

Ms. Stewart further testified that Ms. Hamilton did not qualify for the gift card. Ms. Hamilton received the gift card from an administrative person, not from anyone in management at Genco. Ms. Stewart assumed Ms. Hurst gave Ms. Hamilton the gift card as a bereavement offering.

Ms. Hamilton filed a Petition for Benefit Determination on April 29, 2015, seeking temporary disability and medical benefits for the current injury. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on June 5, 2015. Ms. Hamilton filed a Request for Initial Hearing on August 3, 2015, and this Court entered an Agreed Initial Hearing Order on September 9, 2015. As set forth in the Agreed Initial Hearing Order, the Court bifurcated this cause and agreed to adjudicate the issue of compensability separately and prior to the adjudication of the issue of compensation. This Court conducted the Compensation Hearing on the issue of compensability on November 10, 2015.

At the Compensation Hearing, Ms. Hamilton argued that she worked for Kenco

for eight years and wanted to continue her job the GSK warehouse for Genco. To continue her employment and keep her job, the exam was mandatory. If she passed the pre-employment, "Fit for Duty" physical exam, Genco would have hired her. But for the injury during the exam, Genco would have employed her.

Genco argued that it was not a continuation of employment. Ms. Hamilton was an applicant with a new company. She did not have to apply. The injury did not arise out of or occur in the course and scope of her employment with Genco. Ms. Hamilton did not establish the time and place element as the incident occurred at Nova, a separate facility unassociated with Genco. Ms. Hamilton also did not meet the "arise out of" element, as she was not performing any job function for Genco when the incident occurred. She was a voluntary participant in an application process. The gift card received by Ms. Hamilton was a gratuitous gift, a love offering, or bereavement gift.

Kenco argued that Ms. Hamilton was not working for Kenco when the injury occurred. She also was not on Kenco premises. As a result, she cannot prove that the injury primarily arose out of and occurred in the course and scope of her employment.

Several days following the Compensation Hearing, Ms. Hamilton submitted Late-Filed Exhibit 3, without leave of Court. Genco objected to the introduction of Late-Filed Exhibit 3 on grounds of lack of foundation, hearsay, and no opportunity to examine the document or question the witnesses concerning the same. The Court sustains Genco's objection and marks Late-Filed Exhibit 3 for Identification Purposes Only.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[2] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). For an injury to be compensable, it must arise primarily out of and in the course and scope of employment and be identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(13)(A) (2014). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the

---

[2] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015). *See also* Tenn. Code Ann. § 50-6-239(c)(6) (2014) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

Genco and Kenco rely on the case of *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350 (Tenn. 2005). In *Blankenship*, the employee injured her back while taking an upper body strength test on the employer's premises. The employee, who was laid off at the time of the injury, voluntarily took the strength test as part of the application process for new jobs being created in the employer's factory. The trial court found that the employee's injury was not compensable because it did not arise out of her employment. The employee's appeal was transferred to the full Supreme Court prior to the Special Workers' Compensation Appeals Panel hearing oral argument. The dispositive question before the full Supreme Court was whether the evidence preponderated against the trial court's finding that the employee's injury did not arise out of her employment.

The employer in *Blankenship* argued that the employee's injury did not arise out of and occur in the course of her employment because she voluntarily participated in the strength test and received no compensation. *Id.* at 354. The employer also argued that the employee's job, from which she was laid off and to which she was later called back, did not have lifting requirements. *Id.* The employer further asserted that the strength test was not a condition of the employee's continued employment or return to work. *Id.*

The employee in *Blankenship* responded that her injury should be compensable because the employer paid for the strength test, scheduled and conducted the test on the employer's premises, and the test was available only to employees, not the general public. *Id.* Thus, the employee contended that her participation in the test provided a benefit to the employer by identifying a group of persons physically capable of performing the new jobs at the plant. *Id.*

In *Blankenship*, the Supreme Court, like the trial court, concluded that the employee's back injury did not arise out of her employment because the record failed to establish a causal connection between the conditions of the employee's job and her back injury. *Id.* at 355. In reaching this conclusion, the Court held:

> The employee's injury did not result from a danger or hazard peculiar to her work or was not caused by a risk inherent in the nature of her work. Evidence that the employer paid for the strength test and administered it on its premises does not trump the fact that the injury did not occur while the employee was performing her job making bullets or a task incidental thereto. Rather than resulting from a danger or hazard peculiar to her work

5

or being caused by a risk inherent in the nature of her work, the employee was injured while undertaking a voluntary test– for which she was not compensated – as part of the application process for a job she did not have and may not have gotten even if she passed the test. In short, this case falls within the rule that an injury which is merely coincidental, contemporaneous, or collateral with the employment is not compensable.

*Id.* (internal citations omitted).

The Supreme Court in *Blankenship* similarly concluded that the employee's back injury did not occur in the course of her employment. *Id.* In reaching its conclusion, the Supreme Court noted:

> The record demonstrates that taking the strength test was strictly voluntary. As stated by the trial court, there was "no element of compulsion" on the employer's part. The posted notice directed employees interested in the new positions to contact human resources. The notice did not require employees to take the test or otherwise apply for the new jobs. Moreover, the record is unrefuted that the strength test was not a condition of the employee's continued employment or being called back to work. Further, the employee was not paid to take the test, and her current job did not have lifting requirements. The test was merely for the purpose of determining if employees interested in being considered for the new jobs met the physical qualifications for those positions. While it is true that the employee's participation in the test benefitted the employer by helping it identify persons physically capable of performing the new jobs, it is equally true that the injury did not occur while the employee was performing a duty that she was employed or required to perform or engaged in a task incidental thereto. Accordingly, the trial court correctly declined to award benefits.

*Id.*

Here, like in *Blankenship*, at the time the injury occurred, Ms. Hamilton was not "clocked-in" or working for Kenco or Genco. She was not performing any job duties for Genco or Kenco at the time of the exam and did not receive a paycheck from Kenco or Genco for her participation. The injury did not result from a danger or hazard peculiar to her work or caused by a risk inherent in the nature of her work. This Court finds that Ms. Hamilton's injury did not primarily arise out of her employment with Kenco or Genco.

Likewise, Ms. Hamilton chose to apply for employment with Genco, which required her to complete a pre-employment, "Fit for Duty" physical examination. Ms. Hamilton acknowledged, "No person or entity has coerced or forced me to take the PPE and my decision to participate in the PPE is made voluntarily." (Ex. 2). The pre-

6

employment, "Fit for Duty" physical exam took place at Nova, an off-site medical facility. Genco paid Nova to administer the physical exams. Neither Kenco nor Genco operated the medical facility or administered the exam. No representatives of Kenco or Genco were present at the time of the exam. This Court finds that Ms. Hamilton's injury did not occur in the course or scope of her employment with Kenco or Genco.

Accordingly, this Court concludes that Ms. Hamilton failed to establish by a preponderance of the evidence that she sustained a compensable injury primarily arising out of and in the course and scope of her employment with Kenco or Genco.

**IT IS, THEREFORE, ORDERED** that Ms. Hamilton's cause of action against Kenco Logistics Services, LLC, Genco Distribution Systems, and their workers' compensation carriers is hereby dismissed with full prejudice against refiling the same.

Court costs are taxed equally against each employer's carrier pursuant to Rule 0800-02-21-.07 (2015) of the Tennessee Compilation Rules and Regulations.

**ENTERED this the 16th day of December, 2015.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed

7

within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

**APPENDIX**

Technical record:
- Petition for Benefit Determination, filed April 29, 2015;
- Dispute Certification Notice, filed June 5, 2015;
- Request for Initial Hearing, filed August 3, 2015;
- Agreed Initial Hearing Order, entered September 9, 2015;
- Genco Distribution Systems' Pre-Compensation Hearing Statement, filed November 2, 2015;
- Kenco Logistics Services, LLC's Initial Hearing Brief, filed November 3, 2015;
- Ms. Hamilton's Pre-Compensation Hearing Statement, filed November 4, 2015; and
- Kenco Logistics Services, LLC's Pre-Compensation Hearing Statement, filed November 6, 2015.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulated Findings of Facts of the Parties:
- Ms. Hamilton's date of injury is January 30, 2015.
- Ms. Hamilton gave notice of the alleged injury to Kenco Logistics Services, LLC.
- Ms. Hamilton is fifty-eight years old, and presently lives in Knox County, Tennessee.
- Ms. Hamilton completed the twelfth grade and obtained a high school diploma.
- Subsequent to high school, Ms. Hamilton obtained a dental assistant certificate and Tennessee real estate license.
- Both employers denied Ms. Hamilton's workers' compensation claim.
- Neither employer authorized medical treatment or paid medical expenses to or on behalf of Ms. Hamilton.
- Neither employer paid temporary disability benefits to Ms. Hamilton.
- Ms. Hamilton has not returned to work since the date of the alleged injury.
- Ms. Hamilton has not reached maximum medical improvement.
- Ms. Hamilton's average weekly wage while working for Kenco Logistics Services, LLC, was $729.25, which resulted in a compensation rate of $486.50.
- Ms. Hamilton did not earn an income from Genco Distribution Systems.
- The parties stipulated to the admissibility of Tennessee Orthopedic Clinic records, numbered pages 1-17.
- On the date of Ms. Hamilton's alleged injury, she presented for a pre-employment physical for Genco Distribution Systems.
- Genco was not associated with Kenco Logistics Services, LLC in any way.

- Ms. Hamilton was not compensated by Kenco Logistics Services, LLC at the time she completed the pre-employment physical for Genco Distribution Systems.
- The medical facility where Ms. Hamilton completed the pre-employment physical, and where the alleged injury occurred, was off the premises of Kenco Logistics Services, LLC.
- Genco Distribution Systems informed Ms. Hamilton that a pre-employment physical was a pre-requisite to employment by Genco Distribution Systems.
- The pre-employment physical did not further the business of Kenco Logistics Services, LLC, and Ms. Hamilton was not performing work for Kenco Logistics Services, LLC, when the alleged injury occurred.

Stipulated Conclusions of Law of the Parties:
- This claim is governed by the Workers' Compensation Law for the State of Tennessee.
- Ms. Hamilton provided proper, statutory notice of the alleged injury to Kenco Logistics Services, LLC.
- Ms. Hamilton filed her Petition for Benefit Determination within the applicable statute of limitations.

Exhibits:
- EXHIBIT 1: Medical Records of Tennessee Orthopedic Clinic (17 pages); and
- EXHIBIT 2: Physical Performance Evaluation Consent, Waiver, and Release Form.

Exhibits Marked for Identification Purposes Only:
- EXHIBIT 3 (Late-Filed): Genco's Spending Accounts – Profile for Kathy Hamilton.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 16th day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Glen B. Rutherford, Esq. | | | X | grutherford@knoxlawyers.com nshort@knoxlawyers.com |
| D. Brett Burrow, Esq. | | | X | bburrow@bkblaw.com |
| Owen Lipscomb, Esq. | | | X | owen.lipscomb@libertymutual.com |

_Penny Shrum_

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov

11