FILED

December 18, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:12 P.M. EASTERN



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| JACKIE WEBB,<br>      Employee,<br>v.<br>ENREMA, LLC,<br>      Employer,<br>And<br>AIG INSURANCE COMPANY,<br>      Insurance Carrier. | Docket No. 2016-03-1200<br><br>State File No. 69263-2016<br><br>Judge Lisa A. Lowe |

## EXPEDITED HEARING ORDER
## DENYING BENEFITS

This matter came before the undersigned Workers' Compensation Judge on November 28, 2017, for an Expedited Hearing. The central legal issue is whether Jackie Webb demonstrated he is likely to prevail at a hearing on the merits that his injury arose primarily out of and in the course and scope of his employment with Enrema and, if so, whether he is entitled to medical and temporary disability benefits. For the reasons set forth below, the Court holds Mr. Webb failed to demonstrate he is likely to prevail at a hearing on the merits. Therefore, the Court denies his claim at this time.

### History of Claim

Mr. Webb worked for Enrema as a well tender. His job duties consisted of gauging well pressures, changing belts and spark plugs, and performing general maintenance and landscaping around the wells. Enrema issued Mr. Webb a truck, tools, and a weed eater to perform his job duties. While driving his work truck in the early morning hours of August 13, 2016, Mr. Webb swerved to miss a deer and hit a tree. He injured his neck, legs, hip, and low back. Emergency personnel transported him to the hospital where he underwent surgery.

Mr. Webb remained in-patient for three days before the attending physician discharged him, restricting him from heaving lifting, driving, and toe touch weight

bearing of the left leg. He subsequently received follow-up orthopedic care. Mr. Webb contacted Mr. Campbell to determine whether Enrema could accommodate his restrictions, but Mr. Campbell terminated him. Mr. Webb filed a C-32 Medical Report that indicated he was unable to work from August 13, 2016, until April 17, 2017. He testified that he has not worked since the accident.

Enrema denied Mr. Webb's claim on grounds that he was not in the course and scope of his employment at the time of the accident. Specifically, Enrema contended Mr. Webb had no reason to be working at 4:30 a.m. on August 13, a Saturday. In the alternative, if Mr. Webb intended to work that day, he deviated on a personal errand at the time of the accident. The parties gave the following testimony regarding this disputed issue.

*Mr. Webb*

During the week of the accident, Mr. Webb told Mr. Campbell that he needed to take Friday, August 12, off to take his fiancée, Ms. Barnes, to a doctor's appointment in Nashville and would make up the work on Saturday, August 13.

Mr. Webb testified he drove Ms. Barnes to Nashville on Friday and stayed in his vehicle while she attended her appointment. He provided an "excuse note" from Dr. Raju Indukuri's office showing she had an appointment on August 12. Later in the day, Mr. Campbell contacted Mr. Webb to advise he could pick up his paycheck. Sometime around 5:00 p.m., Mr. Webb returned to Enrema. While there, he got belts and equipment.

Mr. Webb testified that he got up at 4:00 a.m. on Saturday, August 13, to try to finish his work by 6 p.m. He loaded some of his supplies and equipment in his work truck and headed toward the Brimstone well. After traveling a short distance, Mr. Webb realized that he left his tool bag with $20.00 in it and Enrema's weed eater at his house. Mr. Webb maintained he turned around to go home to get the items. He said he needed the money to buy oil for the weed eater. Shortly after turning around, Mr. Webb had the accident.

Mr. Webb provided a recorded statement to an adjuster. He acknowledged that he told the adjuster he turned around to go back and get his money and did not mention needing his tool bag or the weed eater or that he needed money to buy oil. Mr. Webb conceded that Enrema had an account at a local gas station and he could have obtained the oil without having to pay for it and that he did not need money to perform his job duties. Mr. Webb agreed it was dark at 4:30 a.m. and that he had a crossbow in his truck at the time of his accident. However, he said it was not for deer hunting but was for protection in case he encountered a snake.

2

*Mr. Campbell*

Mr. Campbell confirmed that on a prior occasion he let Mr. Webb take off on a Friday and make up the work on a Saturday. He also agreed that Mr. Webb told him he needed this particular Friday off to take Ms. Barnes to an appointment in Nashville and that he would make up the work the next day. However, Mr. Campbell's remaining testimony varied from Mr. Webb's significantly. Mr. Campbell testified that when Mr. Webb came to pick up his check, he looked as if he had been working, so he asked Mr. Webb if he went to Nashville. He said Mr. Webb told him he did not have the money to go to the appointment. Because of that, he thought Mr. Webb worked that Friday and would not be working on Saturday.

Enrema averred that Mr. Webb did not go to Nashville for Ms. Barnes' appointment on August 12 and filed the declaration of Dr. Indukuri. Dr. Indukuri stated Ms. Barnes is one of his patients; the excuse note was in error; and he was not aware of how Ms. Barnes came to obtain it. He said Ms. Barnes did not attend an appointment at his office on August 12 because his office was closed. He further stated that he saw Ms. Barnes on August 15. Therefore, Mr. Webb had no reason to be working Saturday.

Even if Mr. Webb intended to work, Enrema contended he deviated on a personal errand at the time of the accident. Mr. Campbell testified that it was dark at 4:30 a.m. and a person would not be able to attend gauges in the dark. Enrema relied on Mr. Webb's recorded statement where he said he turned around to get his money but failed to mention anything about his tool bag or weed eater or that he needed the money to buy oil. Mr. Campbell testified that Mr. Webb did not need money to perform his job duties and could have obtained oil on Enrema's account.

### Findings of Fact and Conclusions of Law

Mr. Webb bears the burden of proving all essential elements of his claim by a preponderance of the evidence. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, at an Expedited Hearing, his burden of proof requires him only to come forward with sufficient evidence from which this Court can determine that he is likely to prevail at a hearing on the merits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

To be compensable, an injury must arise primarily out of and in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2017). Traditionally, courts have held that the statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of

3

employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle,* 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.,* 181 S.W.3d 314, 318 (Tenn. 2005).

In contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.,* 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.,* 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, the element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992). The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Blankenship,* 164 S.W.3d at 354. Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.,* 270 S.W.2d 389, 390 (Tenn. 1954).

Applying these principles, the Court finds that Mr. Webb failed to establish that the accident and his injuries arose primarily out of and in the course and scope of employment. The sole reason Mr. Webb would have been working on Saturday, August 13, was to make up time for missing work on Friday, August 12, for taking his fiancée to her appointment. Mr. Webb filed an excuse note from Dr. Indukuri's office showing she had an appointment on August 12. However, the Court credits Dr. Inkukuri's declaration, which unequivocally stated: the excuse note was in error and he was not aware of how Ms. Barnes obtained it; he did not see Ms. Barnes on August 12 because his office was closed; and he saw Ms. Barnes on Monday, August 15.

Additionally, the Court finds the time of the accident important. Mr. Webb acknowledged it was dark, and Mr. Campbell testified Mr. Webb would not be able to perform his job duties in the dark. Mr. Webb offered no explanation as to how he would perform his work in the dark. Finally, the Court holds that even if Mr. Webb did plan to work that Saturday, he deviated on a personal errand at the time of the accident. Mr. Webb told the adjuster in his recorded statement that he turned around to get money. He did not mention the weed eater or his tool bag. Mr. Webb acknowledged that he did not need money to perform his job duties. Based on these facts, the Court concludes that Mr. Webb failed to meet his burden of proof.

Therefore, as a matter of law, Mr. Webb has not come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits. His requests for medical and temporary disability benefits are denied at this time.

4

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Webb's claim against Enrema, LLC and its workers' compensation carrier for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for a **Scheduling Hearing on February 13, 2018, at 10:00 a.m. Eastern Time**. The parties must call 865-594-0109 or 855-383-0003 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without the party's participation.

**ENTERED December 18, 2017.**

_____
**LISA A. LOWE, JUDGE**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Request for Evidentiary Hearing
5. Employer's Response to Employee's Response to Request for Expedited Hearing
6. Order Setting Expedited Hearing
7. Employer's Tenn. Comp. R. & Regs.0800-02-21-.14(b) Submissions
8. Employee's Pre-Trial Statement

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
1. Affidavit of Jackie Webb
2. Deposition Transcript of Jackie Webb (*Identification Only*)
3. Declaration of Shalondra Fitzgerald and attached Exhibits
4. Declaration of Dr. Raju Indukuri and attached Exhibits
5. Jackie Webb's Responses to Employer's First Set of Interrogatories
6. Jackie Webb's Responses to Employer's Request for Admissions
7. Medical Note of Dr. Raju Indukuri, dated August 12, 2016
8. Gauge Sheet, 26 pps
9. Well Names, Locations and Map, 4 pps
10. Map of travels on Friday Morning and Evening Work Shifts
11. Route Map for Saturday
12. Photographs of Unloaded Tools and Equipment, 8 pps
13. Table of Contents
    a. Scheduled for MRI on Spine
    b. Current Work Status Notes (*Identification Only*)
    c. Standard Form Medical Report for Industrial Injuries, Form C-32, dated April 17, 2017
    d. Medical Records Certification and Medical Records of University Orthopedic Surgeons, 33 pps
    e. Medical Records of University of Tennessee Medical Center, 56 pp
14. Wage Statement, Form C-41

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on December 18, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Jackie Webb, Self-Represented Employee | | | X | jackwebb4223@gmail.com |
| Catherine Dugan, Esq. Employer's Attorney | | | X | cate@petersonwhite.com |

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

7