**FILED**
**Jun 26, 2020**
**09:54 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| **MELINDA MATHIS,** | ) | **Docket No.: 2019-05-1274** |
| **Employee,** | ) | |
| **v.** | ) | |
| **MURFREESBORO MEDICAL** | ) | **State File No.: 92330-2019** |
| **CLINIC,** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| **HARTFORD ACC. & INDEM. CO.** | ) | **Judge Dale Tipps** |
| **Insurance Carrier/TPA.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This case came before the Court on June 16, 2020, for an Expedited Hearing on whether Ms. Mathis is entitled to medical and temporary disability benefits. To receive these benefits, Ms. Mathis must show that she is likely to establish at a hearing on the merits that her injuries arose primarily out of and in the course and scope of her employment. The Court holds Ms. Mathis failed to meet this burden because the cause of her injury is unknown. Therefore, she is not entitled to benefits.

### History of Claim

Ms. Mathis works as a receptionist for Murfreesboro Medical Clinic (MMC). On September 9, 2019, she took a break from her job duties in the call center to meet her father at the main entrance of the clinic and assist him to an appointment. As she walked through the building, Ms. Mathis fell and broke her femur. She had surgery the next day. While still in the hospital, Ms. Mathis gave a recorded statement to an adjuster. Soon after, MMC denied the claim.

Ms. Mathis testified that she fell because she tripped over a hand sanitation station as she came around a corner into the elevator area. She said the station was not in its usual location against the wall next to an elevator. Instead, it had been moved closer to the corner

1

and was facing a different direction. She tripped on the base of the station and fell, hitting her head and breaking her leg.

Amber Gharing, MMC's Safety Coordinator, testified that she arrived on the accident scene while the EMTs were stabilizing Ms. Mathis's leg. At that time, the hand sanitation station was in its regular place next to the elevator. Ms. Gharing inspected the scene and took photographs. She found no tears in the carpet or other trip hazards in the area. Ms. Gharing testified that the sanitation stations are not moved around but stay in the same locations. She added that they are heavy and difficult to move.

MMC submitted the affidavits of Diana Thomas and John Grey, its employees. Ms. Thomas and Mr. Grey were present at the scene and assisted Ms. Mathis. They confirmed Ms. Mathis told them she tripped and fell. Ms. Thomas added that Ms. Mathis "was unsure what she fell over at that time" and did not know whether "she had fallen off of the side of her shoe."[1]

The affidavit of another employee, Sharon Buckingham, stated that MMC provided call center employees with two breaks per eight-hour shift. Employees were not required to clock out for these breaks and could use them for personal activities. Ms. Buckingham also said that the sanitation stations frequently slid out into the hallway.

Ms. Mathis testified she gave a recorded statement on September 10. In the statement, she described the accident in detail. Regarding the accident itself, she said, "[A]s I was rounding the corner to get to the elevators, I tripped and I don't know if I twisted my ankle or my foot could've . . . ." Asked what might have caused her to fall, Ms. Mathis responded:

> I don't, I don't remember. I know that we have those little stands that have, like, tissue, and, you know, those little hand wipes that you can . . . and I don't know if maybe I had caught the corner of that and slipped 'cause, you know, they're made out of metal so I don't know if my [foot] may have hit that and slipped. I truly do not remember. That's how quick it was. . . . But I don't know if I slipped on that thing. I really truly do not remember. I just know I was down on the floor and I could not move my legs.

During the hearing, Ms. Mathis testified she had no recollection of giving the recorded statement, probably because she was only recently out of surgery and under the influence of anesthesia or pain medicine. She also disputed the characterization that she does not know what caused her fall. Instead, Ms. Mathis said she began remembering how

---

[1] Ms. Mathis brought to the hearing the heeled sandals she was wearing at the time of the accident. She explained that the strap of one of them had been cut by the EMTs, not broken when she fell, as suggested by MMC.

the accident happened when she started having nightmares about it.

Ms. Mathis requested medical benefits and asked that the Court designate Dr. Brad Askam as her authorized treating physician. She also requested temporary disability benefits.

MMC argued that Ms. Mathis was not in the course and scope of her employment because she was not performing her job duties when she fell. Further, her injury did not arise primarily out of her work because the fall was not the result of a hazard peculiar to Ms. Mathis's work. MMC therefore asked the Court to deny her request.

**Findings of Fact and Conclusions of Law**

Ms. Mathis must provide sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Specifically, Ms. Mathis must demonstrate she suffered "an injury by accident . . . arising primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(14).

The Workers' Compensation Appeals Board reminded that "arising primarily out of" and "in the course and scope of employment" are not synonymous. An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. By contrast, arising out of employment refers to causation. An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *See Johnson v. Wal-Mart Associates, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *11-12 (July 2, 2015).

*In the Course and Scope of Employment*

The parties agree that Ms. Mathis's accident occurred while she was at work at MMC. However, because it happened during her break, the question is whether the accident occurred in the course and scope of Ms. Mathis's employment.

Tennessee has long recognized what is commonly referred to as the personal comfort doctrine, which, in general, brings injuries suffered by employees while on approved or authorized breaks within the umbrella of compensable injuries. The Appeals Board held that the Workers' Compensation Law does not expressly require that the employee must, at the time of the injury, have been benefiting his or her employer. Instead,

3

employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

*Jacobs v. Bridgestone Americas Tire Operations, LLC,* 2018 TN Wrk. Comp. App. Bd. LEXIS 4, at *12 (Feb. 7, 2018).

Applying this standard to the facts, Ms. Mathis was within the time and space limits of her work. She testified that, at the time of her injury, she was on a scheduled, paid break and was on her way to help her father into the clinic, which she had done at least eight times previously. Further, while MMC argued that the accident did not occur in the course and scope of Ms. Mathis's employment, it offered no proof suggesting any guidelines or restrictions on the types of activities employees may engage in while on their breaks. Absent any limitations, the Court finds that her actions were not so extreme or unusual as to constitute a temporary abandonment of her job. Therefore, Ms. Mathis appears likely to prove that her injury occurred in the course and scope of her employment.

*Arising Out of Employment*

An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). "The mere presence at the place of injury because of employment will not result in the injury being considered as arising out of the employment because the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Blankenship v. Am. Ordnance Sys.*, *LLC*, 164 S.W.3d 350, 354 (Tenn. 2005).

MMC contended that Ms. Mathis cannot prove her injury arose primarily out of her employment because she cannot show that it was the result of an employment hazard. Ms. Mathis countered that the employment hazard in this case was the sanitation station.

Supporting Ms. Mathis's version of the accident is her testimony that someone had moved the station next to the corner of the hallway and the elevator area, causing her to trip and fall. Evidence to the contrary includes: 1) Ms. Gharing's testimony that the station was in its regular location next to the elevator while the EMTs were still treating Ms. Mathis where she fell, as well as the photographs taken immediately after; 2) Ms. Thomas's affidavit stating that Ms. Mathis was unsure at the scene what she had fallen over or whether she had "fallen off her shoe;" and 3) Ms. Mathis's recorded statement, where she stated several times that she didn't know what caused her to fall.

4

After carefully considering the evidence, the Court concludes that Ms. Mathis has not proven that the sanitation station or any other employment hazard caused her fall. Although she appeared earnest in her belief that she slipped or tripped over the station, that belief is not supported by the other proof.

Ms. Gharing testified convincingly that she arrived on the scene soon after the accident and observed the station in its regular location. She found no other hazards, such as rips in the carpet. The photographs taken shortly after the accident show the station against the wall, not near the corner, and protected by a column or protrusion from the elevator wall. For Ms. Mathis's recollection to be correct, someone would have had to move the heavy station several feet between the time she fell and the time Ms. Gharing arrived.[2] This seems unlikely, especially considering Ms. Mathis's statements to Ms. Thomas immediately after the accident that she did not know what caused her fall. She later repeatedly said the same thing during her recorded statement.

Ms. Mathis testified she had no recollection of giving the recorded statement. She also disputed its accuracy because she gave it the same day as her surgery and was likely under the influence of anesthesia or pain medicine. This argument is unpersuasive, as a reading of the entire statement shows that Ms. Mathis was able to give detailed and cogent answers on topics ranging from her job duties and MMC's break policy to her medical history and current medications. After reading the transcript, the Court finds it implausible that Ms. Mathis's ability to answer questions about the accident was impaired. Rather, those responses are more reliable than her later recollections.

Because of the inconsistency in Ms. Mathis's descriptions of the cause of her accident, the Court cannot find at this time that she is likely to prevail on proving that her injury arose primarily out of her employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Mathis's claims against Murfreesboro Medical Center for medical and temporary disability benefits are denied at this time.

2. This case is set for a Scheduling Hearing on August 26, 2020, at 9:00 a.m. Central Time. You must call toll-free at 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation.

---

[2] Ms. Mathis's counsel argued during the hearing that it does not matter where the sanitizer station was. This would be correct if Ms. Mathis were able to establish that she tripped over it. However, because she initially didn't know what caused her fall, her testimony about the location of the station becomes relevant. The inconsistency between her testimony and the other proof on this question does not support her later recollection of the station causing the accident.

**ENTERED June 26, 2020.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Notice of Denial of Claim
2. Declaration of Sharon Buckingham
3. Photographs of the accident scene
4. Records from St. Thomas Rutherford Hospital
5. Records from Tennessee Orthopaedic Alliance
6. Medical bills
7. Wage records
8. Transcript of Ms. Mathis's recorded statement
9. Affidavit of Diana Thomas
10. Affidavit of John Grey
11. Affidavit of Amber Gharing
12. Wage statement

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response to Petition for Benefit Determination
5. Employee's Response Brief to Employer's Pre-Hearing Brief

**CERTIFICATE OF SERVICE**

I certify that a copy of the Expedited Hearing Order was sent as indicated on June 26, 2020.

| Name | Certified Mail | Via Email | Service Sent To |
|---|---|---|---|
| Timothy Lee, Esq. Employee's Attorney | | **X** | tim@timleelaw.com |
| Blair Cannon, Esq. Employer's Attorney | | **X** | blair.cannon@thehartford.com |

/S/ Penny Shrum
_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**